[S. F. No. 11419.  In Bank.—June 30, 1926.]

## BACON SERVICE CORPORATION, Respondent, v. FRED C. HUSS, etc., Appellant.

[1] MOTOR VEHICLES—TRANSPORTATION OF PERSONS OR PROPERTY FOR HIRE — LICENSE TAX — ACT OF 1923 (STATS. 1923, P. 706) — PURPOSE OF.—The obvious and only purpose of the act of the legis-lature (Stats. 1923, p. 706) imposing a license fee for the transportation of persons or property for hire or compensation upon public streets, roads, and highways in the state by motor vehicle, was to provide a revenue with which to maintain and repair the public highways of the state outside of incorporated cities and that such revenue was to be obtained by the imposition of a license or privilege tax on the business of operating motor vehicles for hire over such public highways.

[2] ID.—ACT OF 1923—REVENUE MEASURE.—The act of the legislature (Stats. 1923, p. 706) is not a police measure in any sense; it provides for a license tax for revenue purposes only.

[3] ID. — OPERATORS OF MOTOR VEHICLES USED IN TRANSPORTATION OF SCHOOL CHILDREN—EXEMPTION FROM TAX—CONSTITUTIONAL LAW. The legislature in exempting operators of. motor vehicles used solely for the transportation of persons to and from the public schools from the payment of the license fee provided for in the act of 1923 (Stats. 1923, p. 706), doubtless had in mind the motor vehicles operated by or under contract with public school authorities for the conveyance of school children to and from school; and the classification of such operators in the exemption class was proper.

[4] ID. — OPERATORS TRANSPORTING OWN PROPERTY OR EMPLOYEES — EXEMPTION—CLASSIFICATION.—The fact that those who operate motor vehicles for the transportation of persons or property for hire enjoy a different and more extensive use of the public highways than those who use said public highways for the transportation of their own property or employees, or both, and those who transport no persons or property for hire or compensation, constitutes a natural distinction and a full justification for the separate classification of the latter operators among those exempted from the license tax provided for by the act of the legislature of 1923 (Stats. 1923, p. 706).

[5] ID. — OPERATORS OF VEHICLES WITHIN INCORPORATED CITIES — EXEMPTION — CLASSIFICATION. — The exemption in the act of 1923 (Stats. 1923, p. 706) in favor of taxicabs, drays, transfer vehicles, and other like city vehicles which do not run over regular routes,

and of hotel busses meeting trains, cars, or boats, was intended to apply to those who are engaged in the business of operating such motor vehicles for hire within the limits of incorporated cities, and as such, they may be properly so separately classified for the reason that highways within municipalities are usually not maintainable directly at the expense of the state but from municipal revenues derived from the exercise of municipal powers of license and taxation, and it must be assumed that the legislature had this distinction in mind in limiting the license to the use of highways maintainable by the state and for whose maintenance municipalities are not responsible.

[6] ID. — SIGHT-SEEING MOTOR-BUSSES — CARRIERS OF UNITED STATES MAIL, ETC.—UNLAWFUL EXEMPTIONS—SECTION 21, ARTICLE I, CONSTITUTION.—The exemption in the act of 1923 (Stats. 1923, p. 706) of sight-seeing motor-busses carrying passengers for hire and operating outside of municipalities and the exemption of the entire revenues of operators a part but not all of whose business embraces the carriage of the United States mail and parcels post by contract, are not based on any properly cognizable theory of classification; and such exemptions attempt to confer special privileges and immunities upon operators of such sight-seeing busses and mail and parcels post contract carriers in violation of section 21 of article I of the constitution, and are therefore void.

[7] ID. — INSEPARABILITY OF OBJECTIONABLE PORTIONS OF STATUTE — EFFECT UPON ENTIRE ACT—STATUTORY CONSTRUCTION.—If the objectionable portions of an act are so connected with the rest of the act as to be inseparable therefrom or to render the act inoperative as a complete legislative enactment in the event the objectionable portions be excluded, the entire act must fall.

[8] ID.—ELIMINATION OF OBJECTIONABLE PORTIONS—WHEN ACT MAY BE PERMITTED TO STAND—STATUTORY CONSTRUCTION.—If an act, with objectionable portions excluded, be completely operative as a legislative enactment and it is plain from the terms of the act that the objectionable portions were not the considerations or conditions which moved the legislature to enact the statute and that it was the intention of the legislature to pass the act though the objectionable portions were eliminated, the balance of the statute may be permitted to stand as a complete expression of the legislative will.

[9] ID.—UNLAWFUL EXEMPTIONS IN ACT OF 1923—COMPLETE ACT AFTER ELIMINATION OF.—The unlawful exemptions in the act of 1923 (Stats. 1923, p. 706), are separable from the balance of the

7. See 5 Cal. Jur. 643; 6 R. C. L. 127.
8. See 5 Cal. Jur. 645; 6 R. C. L. 126.

act and when they are eliminated the statute is a legislative enactment complete in all respects and sufficient to accomplish the purposes for which it was adopted.

[10] ID. — OPERATION OF ACT OF 1923 WITH UNLAWFUL EXEMPTIONS ELIMINATED—INTENTION OF LEGISLATURE.—It was the intention of the legislature, gathered from the act of 1923 (Stats. 1923, p. 706) itself, that the statute should operate notwithstanding the unlawful exemptions in the event such exemptions be stricken as constitutionally unauthorized.

[11] ID.—SECTION 11, ACT OF 1923—PURPOSE OF.—Section 11 of the act of 1923 (Stats. 1923, p. 706), which provides that "If any section, subsection, clause, sentence or phrase of this act is for any reason held to be unconstitutional such decision shall not affect the validity of the remaining portions of this act. The legislature hereby declares that it would have passed this act, and each section, subsection, sentence, clause or phrase thereof irrespective of the fact that any one or more sections, subsections, clauses or phrases be declared unconstitutional," was inserted in the act for the purpose of indicating to the court, when required to pass upon the constitutionality of the act or of any portion thereof, and to apply the rules of law applicable thereto, that the statute would have been enacted with the objectionable portions omitted in the event the court should conclude that said portions were separable and beyond the power of the legislature lawfully to incorporate in the statute.

[12] ID.—STATUTORY CONSTRUCTION—INTENT.—The language of section 11 of the act of 1923 (Stats. 1923, p. 706) cannot be viewed as an inexorable command, for it is a judicial question in each case whether the good in a statute may stand notwithstanding the bad; but the use of such language may rightly be considered by the court as a declaration of intention on the part of the legislature that in so far as lay within its power a separable invalid portion of the act should not destroy the whole.

[13] ID.—CONSTRUCTION OF SECTION 11, ACT OF 1923.—That part of section 11 of the act of 1923 (Stats. 1923, p. 706) to the effect that the legislature would have passed the act and each portion thereof "irrespective" of the fact that any portion be declared unconstitutional is not a challenge to the courts that the legislature would have persisted in adopting an unconstitutional act, including the invalid portions, notwithstanding certain parts of the act be held unconstitutional.

[14] ID.—OPERATORS COVERED BY UNLAWFUL EXEMPTIONS—INCLUSION OF WITHIN TERMS OF ACT—INTENT—UNIFORMITY OF ACT—CONSTITUTIONAL LAW.—Section 11 of the act of 1923 (Stats. 1923, p. 706)

---

11.  See 5 Cal. Jur. 646; 6 R. C. L. 125.

makes it plain that if any exemptions should be held invalid it was the intention of the legislature that the operators whose exemption was attempted should be subjected to the general requirements of the act; and the inclusion within the act of the unlawful exemptions being a nullity, the operators thus attempted to be exempted are included within the general terms of the act and can claim no rights or privileges by reason of the attempted exemption because, under the prohibitory provisions of the constitution, they were never entitled to the same; and as thus construed the act is not objectionable to the provisions of section 11 of article I of the constitution requiring uniformity, nor does such construction result in judicial legislation.

[15] ID.—STATUTES—POWER OF COURTS.—The power of the court to declare a statute unconstitutional is one of utmost delicacy in its exercise and should not be asserted to strike down the statute unless there is no proper basis for its reconciliation with the organic law.

[16] ID.—SECTION 11, ACT OF 1923.—STATUTORY CONSTRUCTION.—Section 11 of the act of 1923 (Stats. 1923, p. 706) is not an attempted delegation of legislative authority to the court, nor is it an inconsistent alternative. It is a positive declaration of the purpose of the legislature to put the law in force to the full extent of the legislative constitutional power.

[17] ID.—TAXATION—SECTION 8, ACT OF 1923—CONSTITUTIONAL LAW. Section 8 of the act of 1923 (Stats. 1923, p. 706), which provides that all moneys collected under said act, except such sums as are received for emblems, shall be paid into the state treasury and credited to the motor vehicle fuel fund; that one-half of said collections is appropriated to the state to be devoted to the maintenance and repair of public highways; and that the other half is apportioned to the several counties of the state in accordance with the plan therein provided and to be devoted exclusively to the maintenance and repair of public highways within the counties, does not violate section 12 of article XI of the constitution, which provides, among other things, that the legislature shall have no power to impose taxes upon counties or upon the inhabitants of any county for county purposes, but may by general law vest in the authorities of the county the power to assess and collect taxes for such purposes.

[18] ID. — LICENSE TAXES — STATE PURPOSES. — The license taxes imposed by the act of 1923 (Stats. 1923, p. 706) are in furtherance of a state purpose for the maintenance of state highways and to extend aid in the maintenance of county highways.

15.  See 5 Cal. Jur. 609.
16.  See 5 Cal. Jur. 648.

[19] ID.—COUNTIES—APPORTIONMENT OF FUND.—The assignment of a portion of the fund accumulated under the act of 1923 (Stats. 1923, p. 706) to the several counties of the state would not destroy the effectiveness of that portion of the act which requires the license tax to be paid into the state treasury.

[20] ID.—FRANCHISES—CONSTITUTIONAL LAW.—There is no merit in the contention of an operator of motor vehicles, who is subject to the act of 1923 (Stats. 1923, p. 706), that the license tax therein provided is a tax on its so-called franchise or right to operate its motor vehicles under a certificate of public convenience and necessity issued by the railroad commission, and therefore void under section 14 of article XIII of the constitution.

[21] ID.—REPEAL OF ACT OF 1923 (STATS. 1923, P. 706)—QUESTIONS NOT MOOT.—Questions involving the constitutionality of the act of 1923 (Stats. 1923, p. 706) are not considered moot, even though such act was repealed by a similar act approved May 23, 1925 (Stats. 1925, p. 833), where certain rights, duties, and obligations of those operators who were subject to the requirements of the 1923 statute and who were doing business between the effective date of that act and the effective date of the 1925 statute as well as the rights of the state to revenues during that period survive said repeal.

(1) 37 C. J., p. 170, n. 47; 28 Cyc., p. 33, n. 73.    (2) 29 Cyc., p. 33, n. 73.    (3) 12 C. J., p. 1117, n. 75; 28 Cyc., p. 33, n. 73; 36 Cyc., p. 992, n. 91.    (4) 12 C. J., p. 1117, n. 75; 28 Cyc., p. 33, n. 73; 36 Cyc., p. 992, n. 91.    (5) 12 C. J., p. 1117, n. 75; 28 Cyc., p. 33, n. 73; 36 Cyc., p. 992, n. 91.    (6) 12 C. J., p. 1117, n. 75; 28 Cyc., p. 33, n. 73; 36 Cyc., p. 992, n. 91.    (7) 36 Cyc., p. 977, n. 28, p. 978, n. 31.    (8) 36 Cyc., p. 976, n. 27, p. 978, n. 30.    (9) 36 Cyc., p. 978, n. 31.    (10) 36 Cyc., p. 977, n. 28.    (11) 36 Cyc., p. 977, n. 28.    (12) 36 Cyc., p. 977, n. 28.    (13) 36 Cyc., p. 977, n. 28.    (14) 36 Cyc., p. 976, n. 27.    (15) 12 C. J., p. 787, n. 96, p. 798, n. 39; 36 Cyc., p. 1103, n. 97.    (16) 36 Cyc., p. 977, n. 28.    (17) 15 C. J., p. 633, n. 39.    (18) 28 Cyc., p. 33, n. 73.    (19) 36 Cyc., p. 978, n. 31.    (20) 28 Cyc., p. 33, n. 73.    (21) 4 C. J., p. 649, n. 35.

APPEAL from a judgment of the Superior Court of Fresno County. J. E. Woolley, Judge. Reversed.

The facts are stated in the opinion of the court.

U. S. Webb, Attorney-General, and Frank L. Guerena, Deputy Attorney-General, for Appellant.

Theodore M. Stuart for Respondent.

SHENK, J.—The plaintiff and respondent is a California corporation having its principal place of business in the county of Fresno. It has been and is engaged in the business of transporting property for hire as a private carrier and persons and property for hire as a common carrier over the public highways of the state by means of motor vehicles operated between fixed termini and over regular routes. The defendant and appellant is a law enforcement officer of the state whose duties relate chiefly to the enforcement of laws governing the use of the public highways by motor vehicles in Fresno County. In July, 1924, he was threatening criminal prosecutions against the respondent for alleged violations of the provisions of an act entitled "An act to impose a license fee for the transportation of persons or property for hire or compensation upon public streets, roads and highways in the State of California by motor vehicle; to provide for certain exemptions; to provide for the enforcement of the provisions hereof and for the disposition of the amounts collected on account of such licenses; . . . ," approved June 13, 1923 (Stats. 1923, p. 706). This action was brought to enjoin him from enforcing or attempting to enforce the provisions of that act. The complaint set forth the foregoing facts and charged that said act contravened certain provisions of the state and federal constitutions and was therefore void.

The appellant answered admitting generally the allegations of the complaint but denying specifically the alleged unconstitutionality of the act. By stipulation, the cause was submitted to the trial court on the facts alleged in the complaint and on the issues of law raised by the answer. The court found the allegations of the complaint to be true, concluded that the act was void in its entirety as in violation of both state and federal constitutions and rendered judgment enjoining the defendant from enforcing the same. The defendant appeals. The sole question for determination is the alleged unconstitutionality of the statute.

As indicated by its title, the act was designed to impose a license tax upon those engaged in the business of operating motor vehicles upon the public highways for the transportation of persons or property for compensation. Section 1 defines certain words and phrases employed in the act. The

term "operator" is declared generally to include all persons, firms, associations, and corporations who operate motor vehicles upon any public highway in the state and thereby engage in the transportation of persons or property for hire or compensation. The term "motor vehicles" is defined to mean and include all vehicles, automobiles, trucks, or trailers operated upon or over the public highways of this state whether the same be propelled or operated by steam or electricity or propelled or operated by combustion of gasoline, distillate, or other volatile and inflammable liquid fuels. The term "gross receipts from operation" is declared to include all receipts from the operation of any such motor vehicle beginning and ending entirely within this state and excluding revenues from interstate commerce.

Section 2 of the act provides: "Each operator of a motor vehicle within this state who transports or desires to transport for compensation or hire persons or property upon or over any public highway within this state shall apply to and secure from the board of equalization of the State of California a license to operate each and all of the motor vehicles which such operator desires to operate or which such operator from time to time may operate."

Under section 4 of the act, the renewal of said license is made conditional on the payment by the applicant of four per cent of the "gross receipts from operation" ascertained as provided in the act. Said section further provides "that there shall be deducted from said four per cent of the gross receipts the amount of any county or municipal licenses, and any city, or county or city and county taxes paid by such operators to any city, or county, or city and county in this state upon any of the property actually used and necessary in the operation of such motor vehicles for the transportation of persons or property and upon such payment said state controller shall issue a receipt, in duplicate, to such applicant."

It is provided in section 7 that any operator using the public highways of the state for the transportation of persons or property for hire, either as a public or private carrier without first obtaining the license and making the return of gross receipts provided for, is guilty of a misdemeanor and is punishable by a fine or imprisonment or both. Section 8 provides that after the funds are paid to the state

they shall be apportioned one-half to the state of California and one-half to its several counties as therein provided, the whole to be used exclusively for the maintenance and repair of the state and county highways.

The respondent concedes the right of the state to impose a license for revenue on all persons operating motor vehicles for hire on the public highways. It makes no objection to fixing the amount of such license tax at a percentage of the gross receipts, but it has refused to comply with the requirements of the law because of its alleged invalidity resulting from certain exemptions included in sections 1, 9, and 10 of the act. Section 1 excludes from the definition of the term "operator" everyone "who solely transports by motor vehicle persons to and from or to or from attendance upon any public school," and also everyone "who solely transports his or its own property, or employees, or both, and who transports no persons or property for hire or compensation." Section 9 reads as follows: "This act shall not apply to taxicabs, drays, transfer vehicles and other like city motor vehicles which do not run over regular routes nor shall it apply to hotel busses meeting trains, cars or boats or to sight seeing motor vehicles," and section 10 provides: "Nothing in this act shall be construed to apply to nor to levy a license upon the operation of any motor vehicle or motor vehicles of any operator, or the gross receipts therefrom, when as much as fifteen per cent of the gross receipts of such operator in the aggregate from such motor vehicle or motor vehicles shall have been earned by the transportation of United States mails, parcels post or other government matter under contract with the federal government."

The respondent contends that the statute applies only to some of those who operate motor vehicles for hire over the public highways and in terms exempts others who stand in the same relation to the burdens imposed as does the respondent; that no reasonable distinction can be found to justify their preference and that the act is therefore in violation of section 21 of article I of the state constitution prohibiting the granting of privileges or immunities to citizens or any class of citizens which, upon the same terms, are not granted to all citizens; also in violation of section 11 of article I requiring laws of a general nature to have a uniform operation; also in violation of section 12 of article XI, which

prohibits the legislature from imposing taxes upon counties or the inhabitants thereof for county purposes, and in violation of section 14 of article XIII providing that all franchises other than those mentioned in the section shall be assessed at their full cash value exclusively for the benefit of the state.

On the former hearing the subject was treated particularly with reference to the applicability of section 11 of article I of the constitution. A rehearing was granted in order that more attention might be given in the first instance to the effect of section 21 of article I, in the light of the provision of section 11 of the act in question.

[1] An examination of the entire statute discloses that the obvious and only purpose of the act was to provide a revenue with which to maintain and repair the public highways of the state outside of incorporated cities and that such revenue was to be obtained by the imposition of a license or privilege tax on the business of operating motor vehicles for hire over such public highways. [2] The act is not a police measure in any sense. It provides for a license tax for revenue purposes only. As stated, the respondent concedes that this is a proper purpose to justify a license tax. It contends, however, that if operators of motor vehicles for hire constitute a proper classification to satisfy constitutional requirements, there is no natural, intrinsic, or constitutional distinction between the use to which its motor vehicles are put and the use exercised by certain of the exempted vehicles.

[3] Taking up the exemptions in the order in which they appear in the statute, it is first noted that section 1 exempts operators of motor vehicles used solely for the transportation of persons to and from the public schools. In providing for this exemption, the legislature doubtless had in mind the motor vehicles operated by or under contract with public school authorities for the conveyance of school children to and from school. The expense of such operation is a charge on the public treasury and the exaction of the license tax thereon would naturally increase the general tax burden. The state has a special interest in the development of the public school system and in as full and regular school attendance as possible. To that end such conveyances have been provided at public expense. It is easily conceivable

that the legislature had in mind that by relieving such operators from a state license tax, cheaper transportation for a public purpose would thereby be had. An instance of a similar classification is noted in the exemption from the payment of registration fees under the California Vehicle Act of vehicles owned by the state or by any political subdivision thereof (sec. 78, Stats. 1923, p. 538). There would, therefore, seem to be no objection to the classification of motor vehicles so operated at public expense apart from those operated for hire by private individuals, associations, and corporations.

[4] The next exemption applies to those who use said public highways for the transportation of their own property or employees or both and to those who transport no persons or property for hire or compensation. It is obvious that those who operate motor vehicles for the transportation of persons or property for hire enjoy a different and more extensive use of the public highways. They are thereby enabled to engage in business on the public highways and to provide for themselves a livelihood, particularly because of the existence of the public highways and the facilities thereby afforded. Such extraordinary use constitutes a natural distinction and a full justification for their separate classification and for relieving from the burden of the license tax those who merely employ the public highways for the transportation of their own property or employees.

[5] The respondent next contends that the exemption of "taxicabs, drays, transfer vehicles, and other like city vehicles which do not run over regular routes" is such an exemption as disturbs the required uniformity of the act. It is apparent that this exemption and the further exemption of hotel busses meeting trains, cars, or boats were intended to apply to those who are engaged in the business of operating such motor vehicles for hire within the limits of incorporated cities. As such, they may be properly so separately classified for the reason that highways within municipalities are usually not maintainable directly at the expense of the state but from municipal revenues derived from the exercise of municipal powers of license and taxation, and it must be assumed that the legislature had this distinction in mind in limiting the license to the use of highways maintainable by

the state and for whose maintenance municipalities are not responsible.

In providing for the exemptions heretofore considered, we are of the opinion that the legislature has not acted arbitrarily nor without reason in making such classifications. We do not intend to hold, however, that the exemptions provided for in section 9 of the act would apply to operators therein mentioned who are engaged also in the business of transporting passengers or property for hire outside of incorporated cities as the fact in each case may appear.

[6] A different situation is presented as to the exemptions next to be considered. It is insisted by respondent and it is not denied by the appellant that sight-seeing motor vehicles carrying passengers for hire are quite generally operated in county territory outside of incorporated cities. That being the fact, it is clear that the operators of such vehicles come within the definition of those who are required to obtain licenses and to pay four per cent of their gross receipts to the state under the general provisions of the act. There appears to be no natural or intrinsic and certainly no constitutional distinction between the use of the public highways by the vehicles of the respondent and the same use by sight-seeing busses regularly using the highways of the state outside of municipalities in the business of transporting persons or property for hire.

Likewise it is insisted by the respondent that the exemption of operators who derive as much as fifteen per cent of their gross receipts from United States mail contracts constitutes a classificaton having no basis of distinction except the arbitrary declaration of the statute itself. It is difficult to perceive how this exemption may be justified when it relieves from the burden of the license tax those operators who conduct a motor-bus business outside of municipalities and who perchance may have acquired a government contract for the carriage of mail from which they derive at least fifteen per cent of their gross receipts. Under this exemption the entire revenues of such operators derived from business exclusive of mail contracts—and which may be as much as eighty-five per cent of their gross receipts—are relieved from the deduction of four per cent license tax while a like percentage of the gross receipts of those operators of the same class having no mail contracts are subjected to the tax.

We see no legally justifiable basis for the distinction. It will be noted that the statute does not merely exempt the mail contract revenues from the license tax of four per cent but exempts the entire revenues of such operators from the requirements of the act. We think that the exemption of sight-seeing motor-busses operating outside of municipalities and the exemption of the entire revenues of operators a part but not all of whose business embraces the carriage of United States mail and parcels post by contract were not based on any properly cognizable theory of classification. In further considering these exemptions it would seem desirable and necessary to view them first in the light of respondent's contention that they are in violation of section 21 of article I of the constitution. It is insisted that they confer special privileges and immunities upon the operators there singled out which are not enjoyed by the same classes covered by the general terms of the act. It requires no argument or citation of authority to demonstrate that the respondent's position in this respect is well taken. We feel no hesitancy in holding that said exemptions attempt to confer special privileges and immunities upon operators of such sight-seeing busses and mail and parcels post contract carriers in violation of said section 21 and are therefore void.

It is then to be determined what effect the presence in the act of those unlawful exemptions had on the balance of the act. [7] It is well settled that if the objectionable portions of an act are so connected with the rest of the act as to be inseparable therefrom or to render the act inoperative as a complete legislative enactment in the event the objectionable portions be excluded, the entire act must fall. [8] It is also the rule that if the act, with the objectionable portions excluded, be completely operative as a legislative enactment and it is plain from the terms of the act that the objectionable portions were not the considerations or conditions which moved the legislature to enact the statute and that it was the intention of the legislature to pass the act though the objectionable portions were eliminated, then the balance of the statute may be permitted to stand as a complete expression of the legislative will. The rule in such cases is expressed in *Hale* v. *McGettigan,* 114 Cal. 112 [45 Pac. 1049], where it is said: "Whether a statute containing an unconstitutional provision, with others which

are constitutional, will be sustained as to those which are constitutional and held invalid merely as to those which are not, depends upon the nature of the different provisions in view of the evident purpose of the legislature. If the provisions are so interdependent that those which are invalid are to be regarded as the condition or consideration upon which others were enacted, and it is evident that the legislature would not have enacted the statute except in its entirety, and did not intend that any part should have effect unless the whole could be made operative, the entire statute must be held invalid. On the other hand, if the different parts of the statute are severable and independent of each other, and the provisions which are within the constitutional power of the legislature are capable of being carried into effect after the void part has been eliminated, and it is clear from the statute itself that it was the intent of the legislature to enact these provisions irrespective of the others, the unconstitutional provisions will be disregarded and the statute read as if those provisions were not there. For the purpose of statutory construction, the intention of the legislature, as shown by the general scope and purpose of the law, is to be ascertained. It is never to be assumed that the legislature intended to enact an unconstitutional statute, or that it supposed that any part of its act was beyond its constitutional power; and, if the general scope of an act is within its power, the act is not to be rendered null by reason of a subsidiary provision which was beyond its power to enact. If the manifest purpose of the legislature can be carried into effect by upholding the act and disregarding such subsidiary provisions, that purpose will not be defeated by an unconstitutional provision contained in a subordinate section in the act." (See, also, *People* v. *Capelli,* 55 Cal. App. 461 [203 Pac. 837].) [9] It cannot be questioned that the said unlawful exemptions are separable from the balance of the act and when they are eliminated it is apparent that the statute is a legislative enactment complete in all respects and sufficient to accomplish the purposes for which it was adopted. [10] It remains only to consider whether it was the intention of the legislature, gathered from the act itself, that the statute should operate notwithstanding the unlawful exemptions in the event such exemptions be stricken as constitutionally unauthorized. The provisions of section 11 of the

199 Cal.—3

act afford unmistakable evidence that such was the legislative
intent.    That section reads as follows: "If any section, sub-
section, clause, sentence or phrase of this act is for any rea-
son held to be unconstitutional such decision shall not affect
the validity of the remaining portions of this act.    The legis-
lature hereby declares that it would have passed this act,
and each section, subsection, sentence, clause or phrase thereof
irrespective of the fact that any one or more sections, sub-
sections, clauses, or phrases be declared unconstitutional."

The purpose of that section was undoubtedly to meet such
a situation as is here presented.  [11]  It was inserted in
the act for the purpose of indicating to the court, when re-
quired to pass upon the constitutionality of the act or of
any portion thereof, and to apply the rules of law applicable
thereto, that the statute would have been enacted with the
objectionable portions omitted in the event the court should
conclude that said portions were separable and beyond the
power of the legislature lawfully to incorporate in the stat-
ute.    It is conceded by the respondent that "without such
a declaration in the statute it would be the duty of this
court, if the act were in part constitutional and in part
unconstitutional, to sustain the constitutional part if the
good and the bad were not so blended that they could not
be separated and the constitutional part could stand alone
as a complete expression of the intention of the legislature."
But it is insisted that section 11 is ineffectual to accomplish
the purpose contended for by the appellant.    It is first
pointed out that it is beyond the power of the legislature to
bind the court by the assertion that if any portion of the
act "is to be held unconstitutional, such decision shall not
affect the remaining portions" of the act.    To this conten-
tion we accede.    [12]    But we cannot view the language of
the statute as an inexorable command, for it is a judicial
question in each case whether the good may stand notwith-
standing the bad.    The use of such language may rightly
be considered by the court as a declaration of intention on
the part of the legislature that in so far as lay within its
power a separable invalid portion of the act should not
destroy the whole.

[13]    It is next contended that the second sentence of sec-
tion 11 to the effect that the legislature would have passed
the act and each portion thereof "irrespective" of the fact

that any portion be declared unconstitutional is a challenge
to the courts that the legislature would have persisted in
adopting an unconstitutional act, including the invalid por-
tions, notwithstanding certain parts of the act be held
unconstitutional. To this we cannot agree. The second
sentence is inaptly worded just as the first sentence is too
broad in its apparently mandatory phraseology. But here
again the purpose of the language is plain. It is an assur-
ance to the court that the legislature would have adopted the
act with the invalid portions excluded if it had known that
the inclusion thereof was constitutionally unauthorized, thus
evidencing an intention which otherwise might not have
been apparent on the face of the act, and indicating a pur-
pose to avoid if possible a determination by the court that it
could not be said from the language of the act whether the
legislature would have enacted the statute with the invalid
portions excluded. [14] The section also makes it plain
that if any exemptions should be held invalid it was the
intention of the legislature that the operators whose exemp-
tion was attempted should be subjected to the general re-
quirements of the act. A section similar to section 11 was
involved in the Motor Vehicle Act of 1913 (Stats. 1913,
p. 639), and was given its proper effect in the *Matter of
the Application of Schuler,* 167 Cal. 282 [Ann. Cas. 1915C,
706, 139 Pac. 685], where it was said: "Similar sections have
been subjects of interpretation in other states and it seems
to be the concensus of belief that they impose upon the
courts the duty of supporting the legislative will as far as
possible. (Citing cases.)" When the invalid portions of
the act here in question are excluded it is clear that the
balance of the act contains all of the elements of a completely
operative statute and that it was intended by the legislature
so to be. The enactment then is in the same status it would
have assumed had the unlawful exemptions originally not
have been included therein. In other words, their inclusion
was a nullity and the operators thus attempted to be ex-
empted are included within the general terms of the act and
can claim no rights or privileges by reason of the attempted
exemption because, under the prohibitory provisions of the
constitution, they were never entitled to the same. As so
construed the statute is not then objectionable to the pro-
visions of section 11 of article I of the constitution requiring

uniformity. Nor does this conclusion result in judicial legislation as urged by respondent. [15] It is no more than the application of approved rules of construction, having in mind that the power of the court to declare a statute unconstitutional is one of the utmost delicacy in its exercise and should not be asserted to strike down the statute unless there is no proper basis for its reconciliation with the organic law (*Stockton & V. R. R. Co.* v. *City of Stockton,* 41 Cal. 147, 159; *Matter of Application of Miller,* 162 Cal. 687 [124 Pac. 427].) [16] Section 11 of the act is not an attempted delegation of legislative authority to the court, nor is it an inconsistent alternative. It is a positive declaration of the purpose of the legislature to put the law in force to the full extent of the legislative constitutional power (*Snetzer* v. *Gregg,* 129 Ark. 542 [L. R. A. 1917F, 999, 196 S. W. 925]; *State* v. *Clausen,* 65 Wash. 156 [37 L. R. A. (N. S.) 466, 117 Pac. 1101]; *Standard Lumber Co.* v. *Pierce,* 112 Or. 314 [228 Pac. 812]; 6 R. C. L. 123). It may be granted that if the problem here presented were approached solely from the standpoint of the applicability of section 11 of article I and that if there were no place in its proper solution for a consideration of section 21 of the same article in connection with section 11 of the act, then the conclusion might seem irresistible that the entire statute would fall for lack of uniformity. But the latter conclusion is properly made unnecessary by measuring the statute by other constitutional tests which when properly applied permit the act in general to stand.

The case of *Mordecai* v. *Board of Supervisors,* 183 Cal. 434 [192 Pac. 40], is strongly relied upon by the respondent. A careful consideration of the decision in that case in the light of the terms of the statute then before the court discloses that the conclusions there reached are not controlling in the present case nor are they inconsistent with the rules applied in this controversy. The statute involved in that case provided generally for the creation of irrigation districts in counties throughout the state and conferred special powers upon the board of directors of such districts over irrigation and other districts theretofore organized and existing in all counties pursuant to general state laws. The act then provided that nothing therein contained should affect or apply to any irrigation, protection,

flood control, conservation, or other improvement district situated wholly or in part within any county which had adopted a county charter prior to June 4, 1915, or within any city and county, and that the board of directors provided for in the act should have no power or jurisdiction within the excepted counties or city and county. It was held that there was no natural, intrinsic, or constitutional distinction between districts in chartered and unchartered counties and that the act was therefore void for lack of uniformity in its operation throughout the state. The reasoning and conclusions of the court in that case when applied to the particular act under consideration cannot be questioned, but they do not here apply for several reasons. In the first place, if the act there involved were considered a burden imposed on the districts included within its general terms and that special privileges and immunities were granted to the districts in the excepted counties the exceptions would be objectionable to section 21 of article I of the constitution. But there was no language in the act such as was incorporated in section 11 of the present act, evidencing the intent of the legislature that if the exceptions be held to be unconstitutional the remainder of the act, if possible, should stand. Furthermore, there were in that case valid reasons for concluding that the exceptions in the act were material considerations or conditions attending the favorable vote on the entire measure in the legislature and that without the exceptions the statute would not have been adopted. Again, if the general terms of that act be deemed a denial of the same privilege, the general terms of the act would necessarily fall as in contravention with section 21 of article I and nothing would remain to operate as a legislative enactment.

Other cases cited by respondent do not warrant a different conclusion. In *Pasadena* v. *Stimson*, 91 Cal. 238 [27 Pac. 604], the privileges were conferred by the general terms of the act and the disabilities or burdensome conditions were imposed upon the municipalities included in the exception and the entire act was therefore properly declared void. In the case of *In re Raleigh*, 177 Cal. 746 [171 Pac. 950], this court had under consideration the real estate brokers' license law of 1917. The act contained an exemption of those who had received from the insurance commissioner or the bureau

of building and loan supervision a certificate of authority or license to do business within this state. The exemption was held to be unlawful and the entire act was declared to be invalid. There was nothing in the statute in that case which indicated that if the attempted exemption was invalid and separable the balance of the act should stand or that the legislature would have adopted the statute with the invalid exemption omitted.

It is contended by respondent that *Hill* v. *Wallace,* 259 U. S. 44 [66 L. Ed. 822, 42 Sup. Ct. Rep. 453, see, also, Rose's U. S. Notes Supp.], is decisive of the present case. Its effect in that respect might be conceded if it were here determined that the valid and invalid portions of the act in question were inseparable. The Federal Trade Act of Congress, approved August 24, 1921, under consideration in that case, was found to contain regulations which were unenforceable. The act also contained a section which was the same in effect as section 11 of the present act. The court determined that the invalid portions were so interwoven with the other regulations contained in the act as to be impossible of separation and to render the saving clause ineffectual. A similar saving clause was considered in an Alabama case, concerning which it was held that ''such an expression in an enactment serves only to render certain the legislative intent with respect *to passage* of the valid parts, notwithstanding the invalid, and does not avail to clothe the valid with immunity from the invalidating effect of the law because of the inseparable blending of the bad and good.'' (*State* v. *Montgomery,* 177 Ala. 212, 241 [59 South. 294, 302].) In *Dorchy* v. *State of Kansas,* 264 U. S. 286 [68 L. Ed. 686, 44 Sup. Ct. Rep. 323], it was said that such a saving clause was ''not an inexorable command'' to the court. So here it is recognized that such a clause cannot always save a statute. In *Connolly* v. *Union Sewer Pipe Co.,* 184 U. S. 540 [46 L. Ed. 679, 22 Sup. Ct. Rep. 431, see, also, Rose's U. S. Notes], the anti-trust law of Illinois was under consideration. It provided that its terms should ''not apply to agricultural products or livestock while in the hands of the producer or raiser.'' It was determined that those affected by the general terms of the act were denied the equal protection of the law and the whole statute must fall for the reason ''that the legislature would not have entered

upon or continued the policy indicated by the statute unless agriculturalists and livestock dealers were excluded from its operation.'' The effect of a saving clause was not there involved. In *Spraigue* v. *Thompson*, 118 U. S. 90 [30 L. Ed. 115, 6 Sup. Ct. Rep. 988], the court having found certain provisions of a Georgia statute invalid, refused to declare that the balance of the act should remain unaffected for the reason ''that by rejecting the exceptions intended by the legislature of Georgia the statute is made to enact what confessedly the legislature never meant.'' It was held that such a construction would confer ''upon the statute a positive operation beyond the legislative intent, and beyond what anyone can say it would have enacted in view of the illegality of the exceptions.'' Likewise in that case the effect of a saving clause was not before the court.

Respondent relies on a statement in Lewis' Sutherland on Statutory Construction (vol. 1, 2d ed., sec. 306) where it is said: ''If, by striking out a void exception, proviso or other restrictive clause, the remainder, by reason of its generality, will have a broader scope as to subject or territory, its operation is not in accord with the legislative intent, and the whole would be affected and made void by the invalidity of such part.'' The foregoing is unquestionably the rule except when a contrary legislative intent is ascertainable from the language of the statute or the general purposes or terms of the act. But when it appears in the statute that it was the intent that the separable void portion should not destroy the whole the invalidity of the entire statute will not necessarily result, especially when it is determined, as here, that such was the intent, and that the remainder is a full and complete legislative enactment of the subject to which it relates.

Numerous other cases cited and relied upon by respondent have been examined. In many of them we find a general recognition of the rules applied in the present case and we find none of them, when properly considered, compelling a conclusion contrary to that at which we have arrived.

Cases from other jurisdictions, cited by the appellant, declare the effectiveness of such a saving clause in proper cases. In *N. R. Bagley Co.* v. *Cameron*, 282 Pa. 84 [127 Atl. 311], it was held that a saving clause declaring statutory provisions separable is effective to raise a presumption of the

intent to severally enact the remaining provisions of the act if any severable parts thereof be declared unconstitutional. In *Saari* v. *Gleason,* 126 Minn. 378 [148 N. W. 293], it was held that under such a saving clause the rule is that if a part of a statute be unconstitutional the remaining portions must nevertheless be sustained if enough is left to constitute, an enforceable law. In *Ohio Tax Cases,* 232 U. S. 576 [58 L. Ed. 737, 34 Sup. Ct. Rep. 372, see, also, Rose's U. S. Notes], such a saving clause was given recognition. Further reference to this line of cases is deemed unnecessary, but for a general statement of the rule as applied in this state, see 5 Cal. Jur. 643, 648, and supporting cases cited.

[17] In section 8 of the act it is provided that all moneys collected under and by virtue of the act, except such sums as are received for emblems, shall be paid into the state treasury and credited to the motor vehicle fuel fund. This section then appropriates one-half of said collections to the state to be devoted to the maintenance and repair of public highways. The other one-half is apportioned to the several counties of the state in accordance with the plan therein provided and to be devoted exclusively to the maintenance and repair of public highways within the counties. It is contended by the respondent that section 12 of article XI is thereby violated which provides, among other things, that the legislature shall have no power to impose taxes upon counties or upon the inhabitants of any county for county purposes, but may by general law vest in the authorities of the county the power to assess and collect taxes for such purposes. We find no merit in this contention. [18] The license taxes here imposed by the legislature are in furtherance of a state purpose for the maintenance of state highways and to extend aid in the maintenance of county highways. This action of the legislature would seem to be fully authorized by section 26 of article IV of the constitution, which provides that "the legislature shall have the power to establish a system of state highways, or to declare any road a state highway, and to pass all laws necessary or proper to construct and maintain the same, and to extend aid for the construction and maintenance in whole or in part of any county highway." (See *Buckingham* v. *Commary-Peterson Co.,* 39 Cal. App. 154, 167 [178 Pac. 318].) The cases of *People* v. *Martin,* 60 Cal. 153, and *San Francisco* v.

*Liverpool, L. & G. Ins. Co.,* 74 Cal. 116 [5 Am. St. Rep. 425, 15 Pac. 380], relied upon by the respondent, are not in point, for the reason that the license taxes there involved were not required to be paid into the county treasuries and were imposed and made available for expenditure for county purposes in the absence of constitutional authority or a general law authorizing the county authorities to impose the same. [19] But in any event the assignment of a portion of the fund accumulated under the act here in question to the several counties of the state would not destroy the effectiveness of that portion of the act which requires the license tax to be paid into the state treasury (*Matter of the Application of Schuler, supra,* 289).

[20] There is no merit in the contention of the respondent that the license tax here involved is a tax on its so-called franchise or right to operate its motor vehicles under a certificate of public convenience and necessity issued by the Railroad Commission, and therefore void under section 14 of article XIII of the constitution. That section provides that all franchises (such as the respondent claims to own) shall be assessed at their actual cash value and be taxed at the rate of one per cent each year *exclusively for the purposes of the state.* It is argued that inasmuch as section 8 of the act in question provides that one-half of the license tax collected shall be paid to the several counties the section of the constitution referred to has been violated. The answer is that the tax on the alleged franchise of the respondent as contemplated by the section of the constitution referred to is a property tax on an *ad valorem* basis and is not in any sense a license tax for the privilege of carrying on a business such as the act here involved intended to impose.

We therefore conclude that when the separable and unlawful exemptions are excluded from the act as being obnoxious to section 21 of article I of our state constitution, the remainder of the act is a completely enforceable statute as to all operators engaged in the business of using the public highways of the state outside of municipalities for the transportation of persons or property for hire, including those unlawfully exempted, and that the remainder of said act violates no provision of the state or federal constitutions invoked by the respondent.

[21] The act here under consideration was repealed by section 11 of a similar act approved May 23, 1925 (Stats. 1925, p. 833). Inasmuch as certain rights, duties, and obligations of those operators who were subject to the requirements of the 1923 statute and who were doing, business between the effective date of that act and the effective date of the 1925 statute as well as the rights of the state to revenues during that period still survive said repeal, the questions involved herein are not considered moot.

The judgment is reversed.

Seawell, J., Curtis, J., Richards, J., Waste, C. J., and Lawlor, J., concurred.

Rehearing denied.