[Crim. No. 2840. In Bank.—June 30, 1926.]

In the Matter of the Application of PAUL SCHMOLKE for Writ of Habeas Corpus.

[1] MOTOR VEHICLES—MOTOR VEHICLE TRANSPORTATION LICENSE ACT —EXEMPTIONS—LEGALITY OF.—The exemptions from license tax imposed by the Motor Vehicle Transportation License Act of 1925 (Stats. 1925, p. 833), in favor of those who solely transport persons by motor vehicle to and from or to or from public schools and of those who solely transport their own property or employees, or both, and of those who. transport no persons or property for hire or compensation, are lawful exemptions.

[2] ID.—OPERATION OF EXEMPTED VEHICLES OUTSIDE OF INCORPORATED CITIES—SUBJECTION TO TAX—SECTION 9 OF ACT.—If any of the motor vehicles which are exempted from license tax by section 9 of the Motor Vehicle Transportation License Act (Stats. 1925, p. 833), because of their operation within the limits of incorporated cities, should be operated for hire as a business and not incidentally on the public highways outside of incorporated cities, they would be subject to the license tax.

[3] ID. — EXEMPTIONS — CLASSIFICATION — DISCRIMINATION. — The exemptions and classifications provided for in section 9 of the Motor Vehicle Transportation License Act (Stats. 1925, p. 833), when read in conjunction with the rest of the act, do not amount to

arbitrary action or unlawful discrimination on the part of the legislature.

[4] ID.—CLASSIFICATION BASED ON BUSINESS CONDUCTED.—It is not the type of vehicle, but the peculiar nature of the business conducted upon and over the public highways, that justifies the classification of the statute for licensing purposes.

[5] ID. — CLASSIFICATION OF CERTAIN BUSINESSES. — The fact that numerous business concerns, such as lumber and building material dealers, use the public highways for the transportation of their merchandise and add the cost of cartage to the price of the material delivered, although it might be sufficient upon which to separately classify such use for the purpose of regulation or license or both, would not necessarily compel the inclusion of such concerns in the classification singled out by the Motor Vehicle Transportation License Act (Stats. 1925, p. 833) of those engaged in the business of using the public highways for the transportation of persons or property for hire.

[6] ID. — DISCRETION OF LEGISLATURE — PRESUMPTIONS. — In exercising its power to classify the legislature has a wide discretion; and the presumptions are in favor of the validity of the legislative determination and it will not be overthrown unless it is palpably arbitrary.

[7] ID. — SECTION 9 OF ACT — INDEFINITENESS OF CLAUSE "USUAL TRANSFER DELIVERY ZONES ADJACENT THERETO" — EFFECT UPON REMAINDER OF ACT. — The provision of section 9 of the Motor Vehicle Transportation License Act (Stats. 1925, p. 833) to the effect that certain motor vehicles operating within the "usual transfer delivery zones adjacent thereto" (that is, adjacent to incorporated cities or towns) are exempted from the provisions of the act, is void for vagueness, but its invalidity cannot affect the remainder of the act when considered in its entirety. The clause is merely incidental to the main purposes of the act and is separable therefrom, and in view of section 12 of the act it should be wholly disregarded in the enforcement of the statute.

[8] ID.—OPERATORS UNDER UNITED STATES MAIL AND PARCELS POST CONTRACTS—EXEMPTION—SECTION 9½ OF ACT.—The exemption in section 9½ of the Motor Vehicle Transportation License Act (Stats. 1925, p. 833) of that part of the gross income of operators derived from United States mail and parcels post contracts entered into prior to the first day of May, 1925, does not unlawfully discriminate against operators whose contracts were entered into after that date.

6. See 5 Cal. Jur. 832.
7. See 5 Cal. Jur. 644; 6 R. C. L. 126.

[9] ID.—CONSTITUTIONAL LAW.—No unlawful exemptions are incorporated in the Motor Vehicle Transportation License Act (Stats. 1925, p. 833), and when the fatally vague and indefinite clause in section 9, to the effect that certain motor vehicles operating within the "usual transfer delivery zones adjacent thereto" (that is, adjacent to incorporated cities or towns) are exempted, is stricken from the act, the statute is a complete expression of the legislative will as ascertained from the language thereof, and as such it contravenes no provision of the state or federal constitutions.

(1) 12 C. J., p. 1117, n. 75; 28 Cyc., p. 33, n. 73; 36 Cyc., p. 992, n. 91. (2) 28 Cyc., p. 33, n. 73. (3) 12 C. J., p. 1117, n. 75; 28 Cyc., p. 33, n. 73; 36 Cyc., p. 992, n. 91. (4) 28 Cyc., p. 33, n. 73. (5) 28 Cyc., p. 33, n. 73. (6) 12 C. J., p. 1130, n. 27; 37 C. J., p. 198, n. 24. (7) 36 Cyc., p. 969, n. 90, p. 976, n. 27. (8) 12 C. J., p. 1117, n. 75; 28 Cyc., p. 33, n. 73; 31 Cyc., p. 975, n. 4; 36 Cyc., p. 992, n. 91. (9) 36 Cyc., p. 976, n. 27.

PROCEEDING in Habeas Corpus to secure release from custody on charge of violation of Motor Vehicle Transportation License Act of 1925. Writ discharged and petitioner remanded.

The facts are stated in the opinion of the court.

Jeremiah F. Sullivan, Sullivan & Sullivan and Theo. J. Roche and Theodore M. Stuart for Petitioner.

U. S. Webb, Attorney-General, and Frank L. Guerena, Deputy Attorney-General, for Respondent.

SHENK, J.—The petitioner seeks a release on *habeas corpus* from his detention by the chief of police of the city and county of San Francisco. He was arrested pursuant to a warrant issued upon the filing of a complaint in the police court of said city and county charging him with a misdemeanor in that he did, on the twenty-first day of September, 1925, engage in the business of transporting property for hire upon and over the public highways of the state of California without having obtained a license so to do as required by the Motor Vehicle Transportation License Tax Act, approved May 23, 1925 (Stats. 1925, p. 833). In and by said act it is made a misdemeanor punishable by fine or imprisonment, or both, for any person, firm, association, or

corporation to operate motor vehicles for hire upon and over the public highways of the state without procuring a license and thereafter paying the license fees as prescribed in said act. The petitioner is now, and for several years last past has been, engaged in the business of operating for hire motor vehicles upon and over the public highways of the state. He has refused to apply for a license, claiming that the said act is unconstitutional. The objections which he urges in that respect are substantially the same as those made by the plaintiff and respondent in *Bacon Service Corp.* v. *Huss, ante,* p. 21 [248 Pac. 235]. The 1925 statute covers the same subject matter as the former statute (Stats. 1923, p. 706), which it repeals. The provisions of the present statute are the same as the 1923 statute with certain exceptions which will be noted.

In section 1 of the present statute the definition of an "operator" is the same as declared in the former statute, but following the definition a new provision is inserted requiring that all exempted freight-carrying vehicles shall obtain exempt emblems from the state board of equalization and display the same in the manner provided. No objection is raised to this additional regulation. Section 4 provides for the payment of the license fee after deduction therefrom of all county and municipal licenses and taxes and is substantially the same as the former statute. Section 7 provides the penalties for violations of the act and section 8 for the allotment of the revenues derived under the act. These sections are likewise substantially the same as the former statute. Section 9 is as follows: "This act shall not apply to hotel busses meeting trains or boats, nor to taxicabs, drays, transfer vehicles and other like city motor vehicles operating within incorporated cities or towns or the usual transfer delivery zones adjacent thereto, nor shall it apply to such vehicles operating between incorporated cities or towns where no portion of any state or county highway is traversed in such operation." Section 9½ provides: "Nothing in this act shall be construed to apply to nor to levy a license upon that part of the gross income from the operation of any motor vehicle earned on account of carrying United States mail or parcels post under any contract with the United States government entered into prior to the first day of May nineteen hundred and twenty-

five." Section 12, referred to in the former decision as the saving clause, is the same as section 11 of the former statute.

It is insisted by the petitioner that the exclusion from the definition of the term "operator" in section 1 of those who solely transport persons by motor vehicle to and from or to or from public schools and of those who solely transport their own property or employees or both and of those who transport no persons or property for hire or compensation constitute unlawful exemptions; that the exemptions provided for in section 9 of hotel busses, etc., and other like city motor vehicles operating within incorporated cities or towns are unlawful, and that the designation of "the usual transfer delivery zone adjacent to" incorporated cities or towns is void for vagueness; and that the exemption in section 9½ of that part of the gross income of operators derived from United States mail and parcels post contracts entered into prior to the first day of May, 1925, is unlawful. It is urged that the said exemptions are in violation of sections 11 and 21 of article I of the state constitution; that the allotment of one-half of said revenues to the counties in the state is in violation of section 12 of article XI, which prohibits the legislature from imposing taxes on counties or the inhabitants thereof for county purposes; that the alleged unlawful provisions of the act are inseparable from the remainder and invalidate the entire statute; that the act as a whole is obnoxious to section 25 of article IV of the constitution, which, among other things, prohibits the legislature from passing local or special laws for the assessment or collection of taxes; or granting to any corporation, association or individual any special or exclusive right, privilege or immunity, and exempting property from taxation. It also is contended that the said act violates the fifth and fourteenth amendments of the federal constitution.

[1] Considering first the objections to the several provisions of the act and then the act as a whole it will be noted that the exemptions provided for in section 1 have been determined in the Bacon Service Corporation case to be lawful exemptions. It will also be noted that in section 9 of the act sightseeing busses are not exempted and that said section as re-enacted makes more certain the intention of the legislature to exempt from the provisions of the act only those motor vehicles for hire which are operated within

the limits of incorporated cities. It was doubtless contemplated by the legislature that many operators might operate both within and without incorporated cities and towns. This might be true as to many motor vehicles mentioned in section 9. [2] If any of those motor vehicles should be operated for hire as a business and not incidentally on the public highways outside of incorporated cities it would seem to be clear that they would be subject to the license tax. This conclusion is fortified by a consideration of the terms of section 4 of the act, which provides for a deduction from the license tax of all sums paid by any operator on account of county or municipal taxes or licenses. It is thus made plain that it was the intention to exact the license fee from those only who use the public highways outside of incorporated cities in the conduct of their business and that as to those whose business is operating exclusively within such cities the license is not required, this on the theory that the latter are or may be called upon to respond to a license tax or other exaction imposed for like purposes by the municipality itself, and that as to those operating both within and without incorporated cities they should receive a credit in their state license tax for whatever amount they are required to pay as county and municipal licenses and taxes. There would seem to be nothing unfair or unjust in the license plan thus laid out by the statute. [3] We are of the opinion that the exemptions and classifications provided for in section 9, when read in conjunction with the rest of the act, do not amount to arbitrary action or unlawful discrimination on the part of the legislature.

In connection with the return to the writ herein a stipulation of facts was filed from which it appears that at the time of and for more than six months prior to the filing of the stipulation on December 24, 1925, there were and are numerous persons, firms, associations, and corporations operating motor vehicles on the public highways for hire who are exempted from the license tax imposed by the act in question. But it does not appear that those who were and are so operating and are so exempted do not fall within the classification of those who are lawfully exempted. It also appears in the stipulation that the type of motor vehicles used by the exempted classes is similar to the type used by licensed operators. This fact we deem immaterial. [4] It is not the type of vehicle, but the peculiar nature

of the business conducted upon and over the public highways, that justifies the classification of the statute for licensing purposes.

[5] Again, it appears in the stipulation that numerous business concerns, such as lumber and building material dealers, use the public highways for the transportation of their merchandise and add the cost of cartage to the price of the material delivered. These facts might be sufficient upon which to separately classify such use for the purpose of regulation or license or both, but they would not necessarily compel their inclusion in the classification singled out by the statute of those engaged in the business of using the public highways for the transportation of persons or property for hire. [6] In exercising its power to classify the legislature has a wide discretion. The presumptions are in favor of the validity of the legislative determination and it will not be overthrown unless it is palpably arbitrary. (*County of San Luis Obispo* v. *Murphy,* 162 Cal. 588 [Ann. Cas. 1913D, 712, 123 Pac. 808]; 5 Cal. Jur., pp. 832, 833, and cases cited.)

[7] It also appears from said stipulation that "the usual transfer delivery zone" outside of incorporated cities referred to in section 9 of the act is traversed by public highways upon and over which certain exempted operators operate their motor vehicles for hire. If such operators be lawfully exempted no complaint may, of course, be made. But if they belong to the class of operators who conduct their business within the limits of incorporated cities and who desire to engage in such business also in county territory adjacent to said cities it would seem to be impossible for them to determine to what extent the public highways in the adjacent outside territory would be in the "usual transfer delivery zone." We fail to be cognizant of any standard of measurement by which an operator could foretell the extent of any such "zone" and be certain that he was not transgressing the law when he proceeded to conduct his business on the public highways therein. No reason has been suggested by the respondent for the inclusion of said clause in the statute. It is unquestionably void for vagueness (*In re Peppers,* 189 Cal. 682 [209 Pac. 896]). But its invalidity cannot affect the remainder of the act when considered in its entirety. The clause is merely incidental to the main purposes of the act and is separable therefrom.

In view of section 12 of the act it should be wholly disre-
garded in the enforcement of the statute. (*Hewitt* v.
*Board of Medical Examiners,* 148 Cal. 590 [113 Am. St.,
Rep. 315, 7 Ann. Cas. 750, 3 L. R. A. (N. S.) 896, 84 Pac.,
39].)

[8]   It also appears from the stipulation that there are
numerous persons, etc., operating upon and over said public
highways and carrying United States mail and parcels post
for hire under contracts with the United States government
entered into prior to the first day of May, 1925. As we un-
derstand the petitioner's contention on this branch of the
case if it be within the power of the legislature to classify
for purposes of legislation the revenues derived from United
States mail and parcels post contracts, still the exemption
provided for in section 9½ is invalid, for the reason that it
purports to exempt only the revenues from such contracts
as were entered into prior to May 1, 1925, thus unlawfully
discriminating, so it is claimed, against operators whose con-
tracts were entered into after that date.   It is assumed that
the revenues from such contracts may be subjected to the
license tax as an exaction by the state for the maintenance
of the public highways (see *Dickey* v. *Turnpike Co.,* 37 Ky.
113; 31 Cyc. 975).   If so, we think there is a reasonable
basis for their separate classification for the purposes of
legislation.   It has been held that a mail contractor is not a
common carrier but is rather a public agent of the United
States employed in performing a governmental function
(*Atchison, T. & S. F. R. R. Co.* v. *United States,* 225 U. S.
640 [56 L. Ed. 1236, 32 Sup. Ct. Rep. 702, see, also, Rose's
U. S. Notes]; 31 Cyc. 999).   When he acts in the dual capa-
city of a governmental agent and an ordinary operator for
hire that portion of his revenues which is derived from his
mail contracts would seem also to be the proper subject of
legislative classification.   It was undoubtedly the intention
to make the statute apply prospectively and thus to avoid
interference with a public service under existing contracts.
The legislature may have considered that in any event the
powers of the postmaster-general extend only to the au-
thorization of mail carrying contracts for limited periods
(Rev. Stats. 3956).   It may also have considered that in fix-
ing May 1st, which was several days after the measure was
finally adopted by both houses of the legislature, as the

199 Cal.—4

dividing point of time, sufficient notice was thereby afforded to contractors carrying United States mail and parcels post and to prospective contractors to take into account the proposed license tax in entering into new contracts. Whether or not it would be legal notice we deem unimportant. It might have been more in accordance with precision in legislation to have fixed the dividing point at the effective date of the statute, but it may not be said that in designating May 1st any unlawful discrimination was thereby effected.

No additional facts set forth in said stipulation call for further remark. What was said in the Bacon Service Corporation case, *supra*, as to the effect of section 12 of article XI and other provisions of our constitution in relation to the statute in question sufficiently disposes of petitioner's contentions. [9] When the statute is construed in the light of that case and of the foregoing discussion we are satisfied that no unlawful exemptions are incorporated in the act, and when the fatally vague and indefinite clause in section 9 is stricken the statute is a complete expression of the legislative will as ascertained from the language thereof. As such it contravenes no provision of the state or federal constitutions.

The many authorities cited by the petitioner have been noted. The attorney-general does not dispute the rules therein laid down but only their applicability to the case in hand. We find in none of them, when carefully examined and well considered, anything inconsistent with the conclusions herein expressed.

The writ is discharged and the petitioner remanded.

Seawell, J., Curtis, J., Richards, J., Waste, C. J., and Lawlor, J., concurred.

Rehearing denied.