[S. F. No. 13831. In Bank.—January 28, 1931.]

LOS ANGELES & WEST SIDE TRANSPORTATION CO. (a Corporation), Petitioner, v. THE SUPERIOR COURT OF SACRAMENTO COUNTY et al., Respondents.

Harry A. Encell and Samuel T. Bush for Petitioner.

U. S. Webb, Attorney-General, and R. L. Chamberlain and Charles A. Wetmore, Deputies Attorney-General, for Respondents.

Elmer P. Bromley, H. E. Lindersmith, Frank M. Smith and Phil Jacobson, as *Amici Curiae*.

SHENK, J.—This is an application for a writ of prohibition to restrain the respondent superior court from proceeding with the trial of an action pending in said court to recover on behalf of the state certain license taxes imposed on motor vehicles for hire. A determination of the proceeding requires a review of the legislation on the subject.

At its session in 1923 the legislature passed an act to impose a license fee, measured at four per cent of the gross receipts, for the transportation of persons or property for hire by motor vehicles upon public streets, roads and highways of the state. The act was approved on June 13, 1923, and by its terms became effective on January 1, 1924. (Stats. 1923, p. 706.)

At its session in 1925 the legislature passed an act on the same subject and repealed the 1923 statute. (Stats. 1925, p. 833.) The 1925 statute changed the 1923 act in minor particulars, but in substance was a re-enactment and continuation of the 1923 act. (*Bacon Service Corp.* v. *Huss*, 199 Cal. 21 [248 Pac. 235].) In the 1925 act the license tax was also fixed at four per cent of the gross receipts from operations.

At its session in 1925 the legislature proposed a constitutional amendment adding section 15 to article XIII and providing for a tax on the property of persons, firms and corporations operating motor vehicles for hire in the transportation of persons or property on the public highways of the state as common carriers operating between fixed termini or over regular routes. This proposal contemplated a tax based on four and one-quarter per cent of the gross receipts in the case of common carriers of persons and five per cent on common carriers of property, subject to the power of the legislature to change the percentage by a two-thirds vote. It also contained the following provision: "Such taxes shall be in lieu of all other taxes and licenses, state, county and

municipal, upon the property above enumerated of such companies.'' This constitutional amendment was adopted at the general election held on November 2, 1926.

In an apparent endeavor to comply with the new constitutional scheme of providing revenue from this class of motor vehicle transportation and use of the highways of the state, the legislature, at its session in 1927, enacted certain legislation. By an act approved March 5, 1927, effective immediately, sections 3664aa, 3664bb and 3664cc were added to the Political Code (Stats. 1927, p. 17), to carry into effect the newly adopted constitutional provision in so far as the latter was not self-executing. Section 3664aa was again amended in 1929 (Stats. 1929, p. 1554), but in no way affecting this controversy. The License Tax Act of 1925 was also amended as to sections 1, 3, 4, 6, 7, 8 and 9 thereof. (Stats. 1927, p. 1742.) This enactment was by its terms to become effective on October 1, 1927. On the same day that the latter act was approved, to wit: May 31, 1927, the Governor approved an act to repeal *in toto* the 1925 act. (Stats. 1927, p. 1708.) By its terms the repealing act became effective on January 1, 1928. On the same day, to wit: May 31, 1927, an act was approved amending section 77 of ''The California Vehicle Act'', wherein the registration fees on all motor vehicles used for the transportation of persons or property for hire were substantially increased. (Stats. 1927, p. 1708.) By the terms of this act it was to become effective when the act repealing the 1925 License Tax Act should become effective, namely, on January 1, 1928. This direction was rendered ineffective by reason of the fact that the act containing it was subjected to the referendum and its effective date was suspended until after its approval by the electors of the state at the general election held on November 6, 1928. At the same 1927 session the legislature, in order to provide further revenue for highway purposes, increased the gasoline tax on motor vehicle consumption from two to three cents (Stats. 1927, p. 1565).

The foregoing review of our legislation indicates that the legislature intended to conform to the new plan of providing revenue from the operations of motor vehicles for hire as contemplated by the constitutional amendment of 1926. From and after the adoption of that amendment any license

tax, as distinguished from a property tax, could not be imposed on common carriers as defined in the constitutional amendment. As to carriers for compensation other than common carriers, the act of 1925 was amended and continued in force to January 1, 1928, when the repealing act went into effect, on which day also the act amending the California Vehicle Act with reference to increased registration fees on all carriers for hire was intended to take effect, but, as stated, did not then become operative because of the filing of a referendum petition against it.

With the foregoing legislation in mind we approach the problem affected by it and presented by the application herein, wherein it appears that the petitioner is a corporation engaged at all times involved in the controversy in the business of transporting persons and property for hire by means of motor vehicles operated on the public highways of the state.

On March 16, 1928, the attorney-general commenced an action in the respondent superior court to recover from the petitioner certain unpaid and delinquent license taxes alleged to have accrued to the state during the years 1924 and 1925 under the acts of 1923 and 1925 above referred to. This action was one of a hundred or more similar actions brought in the same court for the same purpose about the same time. The petitioner appeared and filed a demurrer to the complaint asserting among other things that the complaint did not state a cause of action and that the court had no jurisdiction to proceed with the action for the reason that the legislation authorizing the collection of said license taxes had been wholly repealed by the Repealing Act effective January 1, 1928. The basis of the contention was and now is that said Repealing Act (Stats. 1927, p. 1708), was unqualified and contained no saving clause preserving to the state the right to pursue the collection of license taxes accrued but unpaid under the repealed legislation. The demurrer was sustained on grounds other than the jurisdictional one, an amended complaint was filed and the state and the respondent court are proceeding to set the case for trial and to adjudicate the cause notwithstanding the petitioner's objections of want of jurisdiction in the court so to do.

 It is the contention of the petitioner that the act of 1927 repealing the act of 1925 without a saving clause rendered the cause of action on behalf of the state for the collection of the license tax unenforceable. The contention is based on the general rule stated in volume 25 of Ruling Case Law, at page 940, as follows: ''The repeal, without a saving clause or provision, of a statute imposing a license tax or fee takes away the right to collect an unpaid tax which is due even though a suit to collect the tax is pending. By the repeal of statutes which authorize the making of assessments and the collection thereof, not only the remedy for the collection of an assessment but also the lien or right is taken away, although expenses have been incurred on the faith of such assessment. And nothing less than a plain exception of existing cases or claims from the operation of the Repealing Act or a continuance of the same system of taxation under new regulations will save such cases or claims from the effect of the repeal.'' Certain cases in this state claimed to be in accordance with the general rule are relied upon. The first in point of time is *Napa State Hospital* v. *Flaherty*, 134 Cal. 315 [66 Pac. 322]. In that case the right conferred by statute on certain state authorities to maintain an action against a parent for the support of an adult insane child, a right which did not exist at common law, was abrogated and it was held that the remedy was lost by a repeal of the statute without a saving clause, since the right was inchoate and not reduced to possession or judgment.

The next is *City of Sonora* v. *Curtin*, 137 Cal. 583 [70 Pac. 674]. In that case a city board of trustees, acting under the authority of general law to impose a license tax for regulation and revenue, passed an ordinance imposing a license tax for revenue on persons engaging in certain business and callings, including attorneys at law. A civil action was commenced to collect a delinquent tax. Before judgment the legislature amended the statute, without a saving clause, so as to deprive the city of the power to license for revenue. The tax was held to be a revenue measure and that the repeal before judgment abrogated the right to enforce it. This case ruled the subsequent case in the same volume. (*Santa Monica* v. *Guidinger*, 137 Cal. 658 [70 Pac.

732].) The next case is *County of Plumas* v. *Wheeler,* 149 Cal. 758 [87 Pac. 909]. In that case the power of counties under the County Government Act to impose a license tax for revenue was cut off by section 3366 of the Political Code. It was held that the enactment of the code section abrogated the power of the county to pursue the collection of a license tax, held to be a revenue measure, for conducting a sheep-raising business. Next is *People* v. *Bank of San Luis Obispo,* 159 Cal. 65 [Ann. Cas. 1912B, 1148, 37 L. R. A. (N. S.) 934, 112 Pac. 866]. In that case the attorney-general commenced an action under the Banking Act of 1903 (Stats. 1903, p. 365), to have the defendant bank declared insolvent. Judgment to that effect was entered and a receiver appointed to liquidate the affairs of the bank. This judgment became final but an appeal was taken from an order denying a motion for a new trial. Pending this appeal the cause of action on which the judgment was founded was repealed by the Banking Act of 1909. (Stats. 1909, p. 87.) The authorities are quite extensively reviewed and the court concluded that the judgment had become final and that its finality was not disturbed by the pending motion for a new trial, the order denying which was affirmed.

Great reliance is also placed on *Flanigan* v. *Sierra County,* 196 U. S. 553 [49 L. Ed. 597, 25 Sup. Ct. Rep. 314, see also, Rose's U. S. Notes]. In that case the county brought an action in the superior court to collect a license tax on the business of raising sheep under the same statute involved in *County of Plumas* v. *Wheeler, supra.* The action was removed to the then United States Circuit Court which rendered a judgment in favor of the plaintiff after an order overruling a demurrer to the complaint, and the refusal of the defendants to answer. The Circuit Court of Appeals affirmed the judgment. (122 Fed. 24.) The Supreme Court reversed the judgment, leaning in agreement with the holding of this court in the cases relied upon by the petitioner herein to the effect that the license tax imposed by the county ordinance was a revenue measure and that the absolute repeal of the statute abrogated the right of recovery under it.

Finally the petitioner cites the case of *Pioneer Oil & Refining Co.* v. *State,* (Tex. Civ. App.) 273 S. W. 615,

which followed the general rule that "when a right given by statute is not by nature a vested right, and at the time of the repeal of the statute has not been reduced to judgment, or otherwise executed, it will fall with the statute, unless expressly excepted", citing 36 Cyc., p. 1226, and the extensive note reporting the case of *Crowe* v. *Cartledge,* 99 Miss. 281 [54 South. 947], which note is found in Ann. Cas. 1913E, p. 471 et seq.

There can be no question as to the existence of the general rule relied upon by the petitioner, but its operation in the last analysis depends on the intention of the legislative branch in dealing with the subject. This is indicated by the note in Ann. Cas. 1913E, above referred to and cases therein cited and other cases relied upon by the respondents, such as *Commonwealth* v. *Mortgage Tr. Co.,* 227 Pa. St. 163 [76 Atl. 5]. The latter case recognized the existence of the general rule but also declared the legislative intention to be the true subject of ascertainment in applying the general rule, saying, at page 182: "No doubt the general rule is that when a statute is repealed without a saving clause, it is to be considered as though it had never existed except as to transactions past and closed. The rule, however, like any other legal principle of general application, must be understood and applied, if at all, so as to give effect to the legislative intention. It is not so much what the general rule of construction is, as what did the legislature intend by repealing all acts or parts of acts inconsistent with the new law which did not abolish taxation on this particular class of corporations but only provided a different method of ascertaining the taxable value."

We think it is not strictly true to say that the legislative intention must be ascertained solely from the language of the Repealing Act. Rather it should be said that if from contemporaneous enactments it is disclosed that the legislature did not intend to abandon the revenue from this particular source, but did intend to continue it in the same or a similar form of revenue exactions, then the general rule would not apply and those subject to payment under the act repealed would be holden for payment under the continued revenue plan. This phase of the rule is epitomized in Sutherland on Statutory Construction, second edition,

section 238, as follows: "Where there is an express repeal of an existing statute and a reenactment of it at the same time, or a repeal and a reenactment of a portion of it, the reenactment neutralizes the repeal as far as the old law is continued in force. It operates without interruption when the reenactment takes effect at the same time." The rule in this respect is illustrated by decisions of this court giving effect to continuing inheritance tax laws of this state. (*Riley* v. *Havens,* 193 Cal. 432 [225 Pac. 275]; *Riley* v. *Howard,* 193 Cal. 522 [226 Pac. 393].) The inheritance tax cases in other respects may be deemed inapplicable here in so far as they hold that upon death the right of the state to the tax becomes vested (see *Trippet* v. *State,* 149 Cal. 521 [8 L. R. A. (N. S.) 1210, 86 Pac. 1084], affirming *Estate of Stanford,* 126 Cal. 112 [45 L. R. A. 788, 54 Pac. 259, 58 Pac. 462]), but the rule of continuing legislation is the same in both classes of cases.

The question then resolves itself to this: Did the system of providing state revenue under the 1923 and 1925 Highway Transportation License Tax Acts continue upon the adoption of section 15 of article XIII of the Constitution and laws enacted pursuant thereto?

A reference to the circumstances and some of the reasons for the proposal and adoption of said constitutional amendment may be helpful. The 1923 act had been attacked in 1924 in the superior court in and for Fresno County. The attack was made on the ground generally that certain exceptions provided for in the act rendered the entire act invalid. The superior court held the act unconstitutional in an injunction suit brought by Bacon Service Corporation against Fred C. Huss, a traffic enforcement officer. While the appeal from the judgment of injunction was pending, the legislature in 1925 proposed the constitutional amendment obviously on the theory that the act of 1923 was unconstitutional. The argument to the voters in support thereof contains the following: "The nineteen twenty-three legislative effort enacting a 4 per cent tax was declared unconstitutional. The last legislature [1925] passed a similar 4 per cent act, to fill the gap until this proposed constitutional amendment might be adopted." But the legislature proceeded on the erroneous assumption of the finality of the

judgment declaring the 1923 act invalid, for on June 30, 1926, this court held the 1923 act valid and reversed the judgment. (*Bacon Service Corp.* v. *Huss*, 199 Cal. 21 [248 Pac. 235].)

In the entire legislative program we find no evidence of an intention to abandon or relinquish the exaction of revenue from common carrier motor transportation companies based on a tax on their gross receipts. On the contrary we find a determined effort on the part of the legislative branch to fasten upon and continue this source of revenue, even to the extent of proposing that it be anchored in the organic law and placed beyond the power of the legislature to abolish. The constitutional percentage is greater than the statutory one by one-quarter of one per cent in the case of passenger carriers and one per cent in the case of property carriers. But there is a compensating element under the new system which, undoubtedly, is greatly to the advantage of common carriers. By the new system they are relieved of all other taxes and licenses, both state, county and municipal. In the aggregate their total tax obligation is probably less than under the old system.

We deem it of no controlling importance that under the old system the revenue was called a license tax while under the new system it is designated a property tax. The constitutional tax is a lieu tax. It merges the property tax and the license tax, is based on a percentage of gross receipts, and in effect may reasonably be said to constitute a continuance of the same system of producing revenue. There has not been a moment of time since the enactment of the 1923 statute when motor transportation companies operating as common carriers for compensation on the public highways of the state between fixed termini and over regular routes were not subject to the state revenue exaction based on a fixed percentage of their gross receipts. We therefore conclude that the license taxes due from common carriers described in the constitutional amendment under the 1923 and 1925 acts may be collected by the state in the pending actions in the superior court.

A different situation presents itself with reference to so-called private or contract carriers, that is, those carriers not constituted by law as common carriers operating

between fixed termini and over regular routes. No provision is made in the constitutional amendment of 1926, or in legislation adopted pursuant thereto, for the payment of a tax or license on their gross receipts or otherwise. The tax to which they are subject would seem to be relegated to the *ad valorem* tax provided for in section 1 of article XIII of the Constitution with additional revenue from them provided by the increased registration fees prescribed in chapter 844, Statutes of 1927, page 1708, above referred to. As to private carriers, the gross receipts tax was not continued beyond January 1, 1928, when the 1925 act was repealed without a saving clause, at which time the amendments to the 1925 act (effective October 1, 1927, Stats. 1927, p. 1742), fell with the act of which they were a part. As to private carriers there is evidenced a clear intention to abandon the gross receipts tax and the general rule of law with reference to unqualified repeal, and abandonment would apply as to them.

From the foregoing discussion it necessarily follows that the respondent court has jurisdiction to proceed with the trial of the action pending before it. In the exercise of that jurisdiction the court has the power to decide whether the petitioner and the defendants in the other actions are common carriers as defined by the constitutional amendment and subject to the payment of the charges sued for or are private carriers as to whom the state has relinquished its right to proceed.

The peremptory writ is denied and the alternative writ is discharged.

Richards, J., Preston, J., Langdon, J., Curtis, J., and Waste, C. J., concurred.