[Crim. No. 3945. In Bank.—April 1, 1936.]

In the Matter of the Application of C. E. BUSH for a Writ of Habeas Corpus.

E. S. Williams for Petitioner.

U. S. Webb, Attorney-General, and John O. Palstine, Deputy Attorney-General, for Respondent.

CURTIS, J.—Petitioner seeks a release on *habeas corpus* from his detention by the constable of the seventh township,

in the county of Kern, state of California. Petitioner was arrested in said county, pursuant to a warrant of arrest issued upon the filing of a complaint in the justice's court of said township. In the complaint, the petitioner was charged with a violation of the provisions of the California Motor Vehicle Transportation License Tax Act, which is hereinafter referred to as the License Tax Act of 1933. (Stats. 1933, p. 928.) The complaint set out in detail the manner in which petitioner operated a motor truck upon the highway of the state of California, and charged: "That while and in and for the purpose of performing the services and carrying on the business and operations aforesaid pursuant to said agreement [hereinafter discussed] said defendant on or about the 18th day of October, 1935, did drive his said truck which had been loaded with products such as aforesaid at said bulk station, and while the same was so loaded, upon the public highway in said seventh township, county of Kern, state of California, and outside of any incorporated city or town without first obtaining the license for which provision is made in the California Motor Vehicle Transportation License Tax Act, of the state of California, and without carrying or displaying upon said motor vehicle so used any number plate or emblem for which provision is made in said act, and having failed and neglected and refused to make any return or report as required under said act, and without paying and having failed and neglected and refused to pay any license tax to the state controller of California as required to be paid in said act."

The following facts appear from the allegations of the complaint: Petitioner is the owner of a certain motor vehicle, consisting of a truck with a tank installed thereon suitable for and used by him in the hauling of gasoline and other refined petroleum products upon the highways of the state. Petitioner, on November 1, 1934, entered into a written agreement with the Texas Company, a corporation, engaged in the business of producing, refining, manufacturing, selling and dealing in petroleum oil and gas and the products thereof within the state of California. By said written agreement, which is set out in full in the complaint, the petitioner agreed to become the "agent" of the Texas Company to manage a certain "bulk station" in the city of Taft, California, and to

use his own truck in making the necessary deliveries of gasoline and other petroleum products from said bulk station to customers within a certain specified district. The customers in the territory covered by said agreement consist of automobile or gasoline service stations and business concerns which buy in large quantity gasoline and other petroleum products. Said truck belonging to petitioner is painted in the color, to wit, red, adopted and used by the Texas Company for painting various structures and equipment used in its business, and on each side of the tank on said truck was painted in letters twelve inches in height the word, "Texaco" which is the trade name of the Texas Company, and on each side of the cab of said truck was painted the legend, "C. E. Bush, Agent, The Texas Company", and on the back of said tank and on each side of the cab of said truck was painted the trademark of the Texas Company. Under the written agreement with the Texas Company, petitioner's chief duties consist in the selling of the company's products in a prescribed territory surrounding said bulk station and in delivering the same in his own truck when deliveries were required. For his services the company agreed to pay him certain commissions upon his sales of gasoline and petroleum products which varied both with regard to the type of product involved and according to whether or not the product was delivered by petitioner at the bulk station or delivered to the customer by the petitioner in his own truck. For example, he received one cent per gallon for Ethyl gasoline when the sale was made at the bulk station and two cents on such sale when the gasoline was delivered in his own truck; one cent per gallon for Calpet gasoline when the sale was made to the customer at the bulk station and one and three-fourths cents per gallon when the gasoline was delivered to the customer by truck. In like manner, a higher commission was received by him per gallon of Fire Chief gasoline and kerosene sold and delivered than for such gasoline or kerosene sold at the bulk station. Certain equipment and facilities at the bulk station consisting of two tanks of twenty thousand gallon capacity each for the storage of gasoline and similar refined products were owned by the Texas Company, including loading platform, warehouse for the storage of lubricating oils and greases, and certain office equipment, all of which were located on land

leased to the Texas Company. It also appears that in addition to soliciting sales for the company, and selling and delivering the products of said oil company, the petitioner herein had certain other duties in connection with the maintenance of the bulk station in proper order and certain clerical work necessarily involved in the sale of such products and in the collection of the purchase price thereof. Title to the gasoline and petroleum products was never transferred to petitioner, and immediately upon making collections he banked all such receipts to the account of the Texas Company. In the case of any bad accounts, the only loss sustained by the petitioner was the loss of his commission on such sale, except in the case of unauthorized extension of credit, in which event the petitioner was personally liable for the entire account. Petitioner received in one lump sum compensation figured on the commission basis as set out in the agreement for all of the services furnished and duties performed by him.

Petitioner refused to comply with any of the provisions of said License Tax Act of 1933, claiming under the set of facts above outlined that he was not an "operator" within the meaning of said act, and that said act had no application to him nor to his transportation operations. In support of his petition for the writ, petitioner advances two main arguments: (1) That the License Tax Act of 1933 applies only to transportation upon public highways *engaged in as a business;* that is, by common carrier and by private contract carriers as transportation agencies; and (2) that the License Tax Act of 1933, as applied to the operations of petitioner, is unconstitutional and contravenes provisions of both the state and federal Constitutions.

The first issue before the court is, therefore, primarily one of statutory construction. The question thus presented is: Does the License Tax Act of 1933 apply solely and exclusively to common carriers and private contract carriers *in the business* of transporting persons and property upon the public highway for hire or compensation? Petitioner argues that the act extends only to such carriers, and that in whatever light his transportation operations are viewed, he does not come within the category of a carrier, either common or private contract carrier, and hence the act has no application to him. It is petitioner's position that a bulk station

operator in delivering gasoline and petroleum products is merely an agent or employee in the business of his principal, the oil company, and that such hauling is merely delivery service incidental to that business. If, however, the bulk station operations be considered the business of the operator himself, petitioner insists it would be the business of a merchant in which the hauling would be but incidental to the whole business of merchandising.

An examination of the exact terminology of the act itself, including both the title of the act, and the definition of "operator," therein specified as subject to taxation, clearly shows that the act is not limited to "carriers" or those who are engaged *in the business* of transportation of persons and property. The title to said act is as follows: "An act imposing a license fee or tax for the transportation of persons or property for hire or compensation upon the public streets, roads and highways in the state of California by motor vehicle." Section 1 of said act provides that: "The word 'operator' shall include all persons, firms, associations and corporations who operate motor vehicles upon any public highway in this state and thereby engage in the transportation of persons or property for hire or compensation, either directly or indirectly. There can be no doubt, of course, that carriers are included within such terminology. But the very phraseology employed likewise compels the conclusion that the act was not intended to be limited to such carrier service but was purposely phrased to include *in addition* other transportation upon the public highways for hire or compensation, directly or indirectly. Compensation for transportation service of either common or private contract carrier is direct compensation, and the very fact that the act expressly defines an operator as one who operates a motor vehicle for compensation, either directly or *indirectly*, supports the conclusion that the act was intended to have a wider application than to carriers alone.

It is also most significant that in the title of the act and in the section of the act defining those persons, firms, associations or corporations taxable, neither the word "carrier", nor the words "in the business of transportation" are to be found. In view of the fact that such words are to be found in a prior statute dealing with the regulation of carriers engaged

50

in the business of transportation of persons and property for hire (Stats. 1917, p. 330), and are also found in the statutes of other states, the absence of such words would indicate that such limiting words had been purposely avoided in the drafting of said act, and that by refraining from using such limiting words, the legislature expressed its intention of not circumscribing the scope of the act to those engaged in the business of transportation as carriers.

The fact that subsequent acts enacted in 1935 which are not tax acts but regulatory acts (Stats. 1935, chaps. 223, 312 and 664) deal with the transportation of property for compensation or hire *as a business* and contain many terms employing the words "carrier" and "in the business" or "as a business" is not persuasive that the License Tax Act of 1933 was intended to deal solely with transportation operations *as a business*. Indeed, the very fact that such terms were deliberately used in the 1935 regulatory acts, and not used in the License Tax Act of 1933, would lead to an opposite conclusion.

It is true that the word "business" appears twice in the License Tax Act of 1933. Under the definition of "gross receipts from operation" (section 1, subdivision d), the act provides that such receipts shall include all receipts from the operation of such motor vehicle or motor vehicles beginning and ending entirely within this state and a proportion based upon the proportion of the mileage within this state to the entire mileage over which such business is done of gross receipts of such operator on all business passing through, into or out of this state, or partly within and partly without this state. Section 9 of the act provides that: "If during any calendar year, any operator pays hereunder license taxes which together with all other taxes and licenses, state, county and municipal, upon the property of such operator used exclusively by him in his business of transporting persons or property for hire or compensation over the public highways of this state, exceed five per cent of the gross receipts from operations of such operator in this state for such calendar year, the difference between five per cent of such gross receipts and the total amount of such taxes and licenses paid during the calendar year shall be credited on any license taxes thereafter due from such operator under this Act, and

the balance shall be refunded to such operator. . . . '' It is to be noted that this latter reference is to be found in a section which provides for a refund to be made in the event payments by an operator of other license fees and taxes to the state, county or municipalities upon property used exclusively in the business of transporting persons or property exceeds a certain amount, and is not found in a section which deals directly with the applicability of the act to such transportation operations. It should be noted, in this regard, that section 12, which deals with penalties to be invoked for the violation of the act, contains not a single word, or term, to indicate that the act is limited to transportation *as a business*. The reference to ''business'', therefore, found in section 9 and subdivision (d) of section 1, in view of the language of the other provisions of the act, is not sufficient in our opinion to compel a conclusion different from that at which we have already arrived; that is, that the act was not intended to be limited to carrier service but was intended to include in addition other transportation upon the public highways for compensation.

Petitioner contends that the history of California legislation with reference to transportation of persons and property upon the public highways of the state for hire or compensation supports his position that said License Tax Act of 1933 was intended to apply only to carriers engaged in the business of transportation and was never intended to apply to any operation not within such category. Such conclusion is not, we think, necessarily deducible from the history of California legislation upon this subject. The history of such legislation discloses two distinct lines of statutes. One line was enacted for the purpose of *regulating* the businsss of transportation by motor vehicles of persons or property for hire or compensation upon the public highways. (Stats. 1917, p. 330, and amendments; Stats. 1935, chaps. 223, 312 and 664.) The following cases are pertinent to the subject of the regulation of such transportation operators: *Western Assn. of Short Line Railroads* v. *Railroad Com.*, 173 Cal. 802 [162 Pac. 391, 1 A. L. R. 1455]; *Frost* v. *Railroad Com.*, 197 Cal. 230 [240 Pac. 26]; *Frost & Frost Trucking Co.* v. *Railroad Com.*, 271 U. S. 583 [46 Sup. Ct. 605, 70 L. Ed. 1101, 47 A. L. R. 457]; *Holmes* v. *Railroad Com.*, 197 Cal. 627 [242 Pac. 486]; *Haynes* v. *MacFarlane*, 207 Cal. 529 [279 Pac. 436]; *Forsyth* v. *San*

*Joaquin Light etc. Corp.*, 208 Cal. 397 [281 Pac. 620]; *Landis* v. *Railroad Com.*, 220 Cal. 470 [31 Pac. (2d) 345]. The License Tax Act of 1933 was enacted as a step in the second line, that of certain acts and constitutional provisions which were primarily *revenue* measures, designed to secure for the state a fair return for the use of the public highways of the state in transporting persons or property for compensation. (Stats. 1923, p. 706; Stats. 1925, p. 833; Stats. 1927, p. 1708; Stats. 1927, p. 1742; California Const., art. XIII, sec. 15; Pol. Code, sec. 3664aa; Stats. 1933, p. 928.) These enactments have been before the courts of this state in the following cases: *Bacon Service Corp.* v. *Huss*, 199 Cal. 21 [248 Pac. 235]; *In re Schmolke*, 199 Cal. 42 [248 Pac. 244]; *Los Angeles etc. Transp. Co.* v. *Superior Court*, 211 Cal. 411 [295 Pac. 837.]; *Alward* v. *Johnson*, 208 Cal. 359 [281 Pac. 389]; *People* v. *Duntley*, 217 Cal. 150 [17 Pac. (2d) 715]; *People* v. *Lang Transp. Co.*, 217 Cal. 166 [17 Pac. (2d) 721]. An analysis of the legislative history discloses the fact that all the statutes dealing with the regulation of transportation agencies refer to persons *in the business* of transportation of persons or property upon the public highways for hire or compensation. On the other hand, sections of the 1923 and 1925 tax acts defining those subject to taxation thereunder did not so provide. In fact both acts specifically exempted any person "who solely transports his or its own property". In the 1927 amendment to the 1925 act, this exemption was eliminated and the words "directly or indirectly" were added to the definition of "operator". (Stats. 1927, p. 1742.) On January 1, 1928, the constitutional provisions of article XIII, section 15, and Political Code, section 3664aa, went into effect and said 1927 act became ineffective. Subsequently these sections of the Constitution and Political Code were held to apply only to common carriers and not to private. contract carriers or other operators. (*People* v. *Duntley*, 217 Cal. 150 [17 Pac. (2d) 715]; *People* v. *Lang Transp. Co.*, 217 Cal. 166 [17 Pac. (2d) 721].) Thereafter the License Tax Act of 1933 here involved was enacted which employed the same language with reference to the definition of an operator as that used in the 1927· act. Section 7, however, of said 1927 act which imposed penalties for the violation thereof provided that "any person, firm, association, or corporation who shall

use the public highway in this state for the transportation of persons or property for hire, either as a public or a private carrier, without first obtaining the license for which provision is herein made . . . shall be guilty of a misdemeanor''. Section 12 of the License Tax Act of 1933, which is the section imposing penalties, provides that ''any person, firm, association or corporation who shall use any public highway in this state for the transportation of persons or property for hire or compensation without first obtaining the license for which provision is here made . . . shall be guilty of a misdemeanor''. The words ''either as a public or a private carrier'' used in the 1927 act, it is thus seen were deleted from the License Tax Act of 1933. It seems reasonable to conclude that the purpose of the License Tax Act of 1933 in using the terminology of the 1927 act, from which the exemption of any person who solely transports his or its own property had been purposely eliminated from a former act, and in deleting from another section of the 1927 act any terminology which would limit the application of the act to public or private carrier, was intended to have a broader scope than the taxation only of those who were carriers or engaged in the business of transportation of persons or property upon the public highways for hire or compensation.

Petitioner has cited authorities from other jurisdictions construing statutes relating to the same subject-matter. Although some of these authorities involve bulk station operators, in view of the fact that the language of the California statute to be construed is distinctly different in phraseology and terms from the statutes of those other jurisdictions these authorities are of little assistance and, of course, are not determinative of the meaning of the California act.

We are satisfied that the purpose of the enactment of the License Tax Act of 1933 was to secure a fair return to the state for the use of its public highways not only from carriers, both common carriers and private contract carriers, but also from the larger class of persons who fairly answer to the description of ''operator'' therein defined as taxable and who receive compensation, either directly or indirectly, from the use of the public highways. Although it is true that the legislature might legally have limited the application of such taxes to carriers, it evidently seemed more just and fair to the

legislature, as it does to us, that all those who receive compensation directly or indirectly from the use of the public highway should bear a proportionate share of the burden of its maintenance.

■ We are also satisfied that in whatever light we view petitioner's operations, petitioner is subject to the provisions of said act, and is subject to the three per cent tax therein imposed upon his gross receipts derived from his transportation operations. By reason of the fact that the Texas Oil Company retains title to the gasoline and petroleum products transported and distributed by petitioner to the customers, his contention that if his operations be considered as his own business, he is in the business of a merchant in which delivery of the petroleum product is but incidental to the whole business of merchandising is without merit.

■ The further contention of petitioner that the delivery by him of the oil company's products under his written agreement with the oil company is in fact a delivery by the oil company of its own goods to its customers for which the company receives no compensation, either directly or indirectly, and for which delivery it should pay no tax, is, we think, also untenable. While the acts of 1923 and 1925 expressly exempted those who solely transport their own property from the payment of any tax, this exemption clause was omitted from the License Tax Act of 1933 and no kindred or similar provision is to be found therein. It might be held therefore in a proper case that even a person who transports his own property is liable for the tax provided for in the License Tax Act of 1933. No such question is presented to us in the instant proceeding, and we expressly refrain from deciding such question. No attempt was made to collect said tax from the oil company. In the present action, the oil company does not own the truck in which its products are transported. On the other hand, petitioner not only owns the truck but he is paid a fixed compensation for transporting therein over the highways of the state, the company's property. He therefore comes within the express provisions of the act and is liable for the payment of the tax provided therein. We think this is so whether he be held in a strictly legal sense to be the agent of the company in the transaction of its business, or as an independent contractor. In a sense the company acts through him in the delivery of its products,

and in the same sense it acts through a carrier when it employs the latter to make delivery. In both cases it is the "operator" of the truck who is using the highway for the transportation of property for hire or compensation, and who is, therefore, subject to the tax. As stated before, the act is strictly a revenue measure and its purpose is to collect a reasonable remuneration from those who use the highway in certain gainful occupations.

It is, therefore, evident that petitioner, upon that portion of his compensation from the Texas Company which he receives for his services, which consist of the delivery of the company's products, is subject to the License Tax Act of 1933. While it may be true that the exact portion of his income which is directly or indirectly compensative for transportation operations, may be somewhat difficult of ascertainment, this fact alone cannot of course furnish an excuse for non-compliance with the act.

We have carefully considered the various grounds advanced by petitioner as reasons for holding the License Tax Act of 1933 unconstitutional and are convinced that none of them is tenable. There are two answers to his first objection that if the License Tax Act of 1933 is construed as applying to persons transporting their own property, the act would be unconstitutional under section 24 of article IV of the Constitution in that the title of the act is not broad enough to embrace transportation upon the highways of one's own property. First, we have held that the operations of petitioner herein which are subject to taxation under the act are not a taxation of the transportation of one's own property upon the highway. Secondly, the title of the act hereinbefore quoted is sufficiently broad, in our opinion, to cover even the transportation of one's own property upon the highway if compensation is received therefor. (See *Collins-Dietz-Morris Co.* v. *State Corporation Commission,* 154 Okl. 121 [7 Pac. (2d) 123, 80 A. L. R. 561].)

The argument that this License Tax Act is special legislation and discriminatory as between merchants selling and delivering petroleum products and merchants selling and delivering other forms of merchandise is based upon an assumption that the state board of equalization intends to apply said act only to transporters of petroleum products. There appears to be no basis for this assumption. Doubtless the

state board of equalization will faithfully perform its duty and tax all operators who fairly come within the definition of operator as defined by said act.

■ No valid complaint can be made that the act is unconstitutional by virtue of the fact that section 14 thereof exempts from its operations motor vehicles operated exclusively within incorporated cities or towns and also motor vehicles operating between incorporated cities or towns where no portion of the public highway outside of the corporate limits of said cities or towns is traversed in said operation. Similar provisions in the 1923 and 1925 acts were upheld in *Bacon Service Corp.* v. *Huss, supra,* and *In re Schmolke, supra.* The tax is placed upon those obtaining compensation for the use of the public highways. ■ The fact that petitioner by reason of his operations upon the public highways outside the incorporated cities or towns is unable to bring himself within the exemption of said act, with the result that he is required to pay a tax based upon both his operations outside the incorporated cities and towns and also within the cities and towns, whereas those who bring themselves within the exemption are not required to pay a tax upon their city operations is not fatal to the validity of the act. Some inequalities are bound to occur even in classifications which are manifestly fair and just.

■ The fact that said act does not specify any method by which it may be determined what part of the gross receipts of petitioner's business and operations are from or should be allocated to the operation of transportation of property upon the public highways does not render such act unconstitutional. Petitioner argues that any assessment of a license tax upon any part of the gross receipts of petitioner's business would be wholly arbitrary and thereby deprive petitioner of his property without due process of law. There is no warrant for the assumption that an assessment will be made arbitrarily. If petitioner is dissatisfied he may proceed under section 9 of said act to have said matter adjusted.

The writ is discharged and the petitioner is remanded.

Waste, C. J., Seawell, J., Langdon, J., Conrey, J., Shenk, J., and Thompson, J., concurred.

Rehearing denied.