[Civ. No. 10593. Third Dist. Nov. 13, 1963.)

LESTER J. GEIJSBEEK et al., Plaintiffs and Appellants, v. BOARD OF EQUALIZATION, Defendant and Respondent.

George & Dillon and Marquam C. George for Plaintiffs and Appellants.

Stanley Mosk, Attorney, Dan Kaufmann, Assistant Attorney General, and Edward P. Hollingshead, Deputy Attorney General, for Defendant and Respondent.

SCHOTTKY, J.—Lester J. Geijsbeek and John H. Geijsbeek, doing business as Geijsbeek Truckers, appeal from an adverse judgment in an action to recover motor vehicle transportation license taxes assessed against them on the gross charges for transportation of logs and lumber owned by Six Rivers Pine Sales, a joint venture.

The appeal is on the judgment roll. Accordingly, the facts are as found by the trial court.

Lester J. and John H. Geijsbeek are partners doing business as Geijsbeek Truckers and are one of three interrelated but separate and distinct organizations. Mad River Lumber Sales, Inc., is a corporation, half of its stock is owned by Jack McPherson and the remaining half is owned equally in individual capacities by Lester J. and John H. Geijsbeek. Six Rivers Pine Sales is 60 per cent owned by Mad River Lumber Sales and 40 per cent by Geijsbeek Truckers, the partnership. (The findings of fact then state, "Thus plaintiffs held a total of 70 per cent of the ownership of Six Rivers Pine Sales"—this overlooks the fact that Mad River Lumber Sales was a corporation and stock ownership

does not mean ownership of other companies in which the corporation has an interest.)

In October 1957 the Board of Equalization billed the Geijsbeeks for amounts due under the Motor Vehicle Transportation License Tax Law for the period August 1, 1955, through July 1, 1957. The proper administrative procedures were followed. The Geijsbeeks paid the tax and filed claims for refunds which were denied. This action followed.

During the period August 1, 1955, to July 31, 1957, the Geijsbeeks were engaged in the transportation of property for hire or compensation by motor vehicles upon the public highways of this state and derived gross receipts from such operations. The operations consisted in part of transporting logs owned by Six Rivers Pine Sales. There was no lease between the Geijsbeeks and Six Rivers. The verbal arrangement between Six Rivers and the Geijsbeeks was to furnish vehicles for a certain amount per thousand feet of board feet hauled. This amount was determined by a computation which considered the distance traveled less certain expenses, including maintenance, drivers' wages, workmen's compensation and payroll taxes. In addition the Geijsbeeks carried the liability insurance on the vehicles and also retained control of and assumed responsibility for the operation of the vehicles and engaged in the transportation of the logs in the motor vehicles they furnished. Specific charges were made for the transportation of the logs. The Geijsbeeks were not in the business of leasing vehicles. The Geijsbeeks did not own the property they transported, and Six Rivers did not transport the property which it owned. The Geijsbeeks earned gross receipts of $61,961.97 for transporting the logs for Six Rivers, of which they collected only $26,918.12. The remainder was written off as bad debts.

The Geijsbeeks also transported in their vehicles upon the public highways lumber owned by Six Rivers. The gross earnings from this operation were $170,228.70 of which sum only $52,514.81 was collected. The remainder was written off as uncollectable bad debts.

The total amount that the Geijsbeeks earned in the described operations was $232,190.37.

The Geijsbeeks were not the owners of the logs or lumber transported. It was the property of Six Rivers Pine Sales.

The issues presented by this appeal are as follows:

1. Whether plaintiffs and appellants were an "operator" within the meaning of the statute with respect to the trans-

portation of logs under the alleged leasing arrangement with Six Rivers Pine Sales.

2. Whether plaintiffs and appellants are entitled to a deduction from gross receipts earned in transporting logs and lumber for Six Rivers Pine Sales of amounts which were later found to be uncollectable and were written off as bad debts.

As a corollary to the first issue, plaintiffs and appellants contend that either they or Six Rivers were entitled to the exemption in favor of persons transporting their own property provided in section 9603.3 of the Revenue and Taxation Code. In connection with the second issue appellants contend that section 1403 of title 18 of the California Administrative Code is invalid.

Section 9651 of the Revenue and Taxation Code imposes a license tax upon all operators at a percentage rate of the gross receipts from operations. The rate during the period with which we are concerned was 3 per cent. An operator is described by section 9603 as follows:

"(a) Any person engaging in the transportation of persons or property for hire or compensation by or upon a motor vehicle upon any public highway in this State, either directly or indirectly.

"(b) Any person who for compensation furnishes any motor vehicle for the transportation of persons or property under a lease or rental agreement when such person operates the motor vehicle furnished or exercises any control of, or assumes any responsibility for the operation of the vehicle irrespective of whether the vehicle is driven by such person or the person to whom the vehicle is furnished, or engages either in whole or in part in, the transportation of persons or property in the motor vehicle furnished.''

The purpose of this statute is to secure a fair return to the state for the use of its highways from both common and private contract carriers and from the larger class of persons who fairly answer to the description of operators and who receive compensation, either directly or indirectly, from the use of the public highways. (*In re Bush*, 6 Cal.2d 43, 53 [56 P.2d 511].)

Subdivision (a) of section 9603.3 of the Revenue and Taxation Code excludes from the description of the word "operator" the following: "Any person transporting his own property in a motor vehicle owned or operated by him unless he makes a specific charge for the transportation. . . .''

■ We think it is clear that the Geijsbeeks were operators under the definition hereinbefore set forth. The Geijsbeeks either under subdivision (a) of section 9603 transported property for compensation by a motor vehicle upon the public highways of this state, or under subdivision (b) they furnished the vehicles under a rental agreement and retained control of or assumed responsibility for the operation of the vehicles and engaged in the transportation of the logs in the vehicles they furnished. By the plain terms of the statute they were ''operators'' whatever the nature of their agreement.

They could be excluded from the term ''operators'' if it can be said they were transporting their own property. Six Rivers was a joint venture formed by a corporation and Geijsbeek Brothers. ■ A joint venture is an association of persons with intent by way of contract to engage in and carry out a single business venture for joint profit. ■ The parties combine their efforts, property, money or skill and knowledge without creating a partnership in the legal sense. (30 Am. Jur., Joint Adventures, § 2, p. 939.) ■ Ordinarily, the only compensation a joint adventurer gets is his share of the profits. He usually is not entitled to any payment for his services. (30 Am. Jur., Joint Adventures, §§ 41, 42 p. 968.) ■ The findings of fact (which may not be challenged on this appeal) state that the Geijsbeek Brothers did not own the logs or lumber they transported and that Six Rivers did not transport its own property. Impliedly the trucks furnished were not part of the joint venture capital. The truck operations were part of the partnership business and isolated from the joint venture. But even if this were not so, a specific charge was made for the services and therefore the Geijsbeeks were operators and subject to the tax. We conclude that the court's determination that the Geijsbeeks were operators is sustained by the record.

■ The remaining question to be decided is whether plaintiffs and appellants are entitled to a deduction from gross receipts earned in transporting logs and lumber for Six Rivers of amounts which were later found to be uncollectable and were written off as bad debts.

Section 9606 of the Revenue and Taxation Code provides: '' 'Gross receipts' include all receipts from transportation operations entirely within this State, . . . 'Gross receipts' as applied in connection with operations under lease or rental agreement include such amounts as the board under such

rules and regulations as it may prescribe determines to be reasonable compensation for the transportation services rendered by the operator.''

In section 1403 of title 18 of the California Administrative Code the board has defined gross receipts as follows: ''Gross receipts include all compensation derived from motor vehicle transportation operations and for all services performed incident thereto, ... Gross receipts means the total consideration charged for the transportation service, including all receipts whether in the form of cash, credits, advances (including expenses paid for or on behalf of the operator), or property or services of any kind or nature. Uncollectable transportation charges (bad debts) are not deductible from gross receipts. ...''

The term ''gross receipts'' has been defined as the entire receipts from operations without deduction, save as expressly modified by the Legislature. (*Bekins Van Lines, Inc.* v. *Johnson*, 21 Cal.2d 135 [130 P.2d 421]; *Pacific Greyhound Lines* v. *Johnson*, 54 Cal.App.2d 297 [129 P.2d 32]; *Savage* v. *Commonwealth*, 186 Va. 1012 [45 S.E.2d 313].)

It is clear that if the Geijsbeeks used an accrual method of accounting all charges earned from the hauling operations would have been included in the gross receipts. They, however, contend that gross receipts means only the amount actually received and that is the only amount upon which the tax could be levied. If the statutes were construed in such manner, the imposition of this tax could depend on the accounting method used. This would defeat the purpose of the tax and result in uncertain collection.

One purpose of the tax is to impose a proportionate share of the burden of the maintenance of public highways upon those who receive compensation directly or indirectly from their use. (*In re Bush, supra,* 6 Cal.2d 43, 53.) In other words, this tax measured by gross receipts is one of the costs of engaging in the transportation business. The tax becomes a lien on all motor vehicles and other personal property at the time it is earned. (See Rev. & Tax. Code, §§ 10096, 10097.) It seems clear that the tax attaches at the time the ''gross receipts'' are earned and not at the time the earnings are received. For this tax to be applied consistently with its purpose, gross receipts must be defined to mean the amounts charged for transportation and not the amount collected. In the sense used in the statute gross receipts are the total amount charged, not the total amount collected.

We are unable to agree with appellants' contention that they are entitled to a deduction from gross receipts of amounts that where written off as bad debts. We believe this contention is unsound for several reasons. First, the Motor Vehicle Transportation License Tax is levied on the privilege of transporting property for hire over the highways, not on the receipt of money. Second, the tax becomes a lien at the time of *earning* of the gross receipts. Third, appellants' contention ignores the basic concept of a *gross* receipts tax and would, in effect, turn the Motor Vehicle Transportation Tax Law into a *net* receipts taxing act.

The Motor Vehicle Transportation License Tax is one of several taxes imposed on users of the public highways. These taxes were enacted to secure a fair return to the state for the use of its public highways. (*In re Bush, supra; Ingels* v. *Riley*, 5 Cal.2d 154, 163-164 [53 P.2d 939, 103 A.L.R. 1]; *Yosemite Park & Curry Co.* v. *Department of Motor Vehicles*, 177 Cal.App.2d 448, 457 [2 Cal.Rptr. 431].) The tax is levied against operators as defined in section 9603 of the Revenue and Taxation Code for the privilege of transporting property for hire or compensation over the public highways. The tax becomes a lien on all motor vehicles and other personal property of the operator at the time of the *earning* of the gross receipts from operations. (Rev. & Tax. Code, §§ 10096, 10097.) There is no provision in the law for deducting bad debts. We believe that the intention of the Legislature was to tax the full amount of gross receipts earned by the operator in exercising the privilege of transporting property for hire over the public highways. The operator should not be permitted to make deductions of amounts which subsequently become uncollectable. The state should not be denied the right to collect the tax on the gross receipts actually earned, since to do so would mean that a simple failure on the part of the operator to collect the gross receipts would deprive the state of its revenues for the use of the highways. This would be an especially improvident result in the present case, where appellants failed to collect from an entity which they dominated and controlled.

The underlying principle common to all gross receipts taxes is that all such taxes are based on a gross amount without any deductions. Deductions for losses or necessary business expenses allowed under net income tax laws are, with few exceptions, not allowed by gross receipts taxing acts. The difference between taxes based on ''gross'' receipts and those based on ''net'' income has been stated by the

United States Supreme Court in *United States Glue Co.* v. *Oak Creek*, 247 U.S. 321, at page 329 [38 S.Ct. 499, 62 L.Ed. 1135, 1141], as follows:

"A tax upon gross receipts affects each transaction in proportion to its magnitude, and irrespective of whether it is profitable or otherwise. ... A tax upon the net profits ... does not arise at all unless a gain is shown over and above expenses and losses, and the tax cannot be heavy unless the profits are large."

To sustain the contention of appellants would in effect be to hold that both bad debts and expenses of operation are deductible from gross receipts. We believe that such a holding would do violence to the concept of a gross receipts tax and would be contrary to the intention of the Legislature.

 For the reasons hereinbefore set forth, we conclude that the trial court correctly determined that appellants were "operators" within the meaning of the Motor Vehicle Transportation License Tax Law (Rev. & Tax. Code, §§ 9601-10501) and that "gross receipts" for the purposes of said law must be interpreted to be the total earnings or charges of appellants' business without deduction or setoff for bad debts or expenses of operation. Therefore appellants were not entitled to the refund sought by them.

The judgment is affirmed.

Pierce, P. J., and Friedman, J., concurred.